# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3183

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Harold Stults, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2009
Filed: August 14, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Harold Stults was indicted for possessing one or more photographs and other matter containing images of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The indictment further charged that Stults possessed child pornography after having previously been convicted for attempted sexual assault of a child in the second degree, a predicate offense requiring the imposition of a ten-year mandatory minimum sentence pursuant to 18 U.S.C. § 2252(b)(2). Stults initially pleaded not guilty to the indictment but, after the district court[1] denied his motion to

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

suppress evidence obtained from a court-authorized search warrant, Stults conditionally pleaded guilty. The district court sentenced Stults to 144 months' imprisonment, followed by a lifetime of supervised release.

Stults appeals, arguing that: (1) his Fourth Amendment rights were violated because law enforcement conducted an illegal search of his computer without a warrant or a valid exception to the warrant requirement; (2) the affidavit submitted in support of the search warrant was the fruit of the illegal search and was insufficient to establish probable cause; (3) his prior conviction for attempted sexual assault in the second degree is not a predicate offense that triggers the ten-year mandatory minimum sentence under 18 U.S.C. § 2252(b)(2); (4) the district court erred in applying a five-level enhancement for distribution for receipt of a thing of value under U.S.S.G. § 2G2.2(b)(3)(B); (5) his 144-month sentence is unreasonable because it is greater than necessary to promote the goals of 18 U.S.C. § 3553(a); and (6) four of the special conditions of supervised release imposed by the district court constitute a deprivation of liberty more burdensome than necessary to serve federal sentencing goals. We now affirm the judgment of the district court.

## I. *Background*

Special Agent Brent Morral of the Department of Homeland Security, Bureau of Immigration and Custom Enforcement, applied for a federal search warrant for 8042 Maywood Street, Omaha, Nebraska—Stults's residence. The application and affidavit requested permission to seize computers, computer files, and other documents pertaining to child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. The application and affidavit also described a method of communication known as peer-to-peer ("P2P") computer file sharing that utilizes the Internet to allow individuals to share data contained in computer files. P2P file sharing can be used to share child pornography and trade digital files containing images of child pornography. Using the P2P file-sharing method, when two users actively participate, files may be sent from one user's computer to another user's computer without the

permission or knowledge of the other user. It is not possible for one user to send or upload data, including child pornography, to another user or his computer without that user's active participation.

In the search warrant application and affidavit, Agent Morral recounted his experience and training in computer usage and investigation of child pornography cases. Additionally, he incorporated details of an investigation by Special Agent Joseph Cecchini of the Federal Bureau of Investigation (FBI) who used a P2P file-sharing program called "LimeWire." Agent Cecchini, in an online undercover capacity, conducted a search looking for users accessing known child pornography sites. After signing on to LimeWire, he entered the search term "PTHC" ("preteen hard core"), a term associated with images of child pornography. Agent Cecchini received responses from Internet Protocol (IP) address 24.252.31.129. Cecchini connected with the computer using this IP address and viewed a list of files available from the computer for sharing. He downloaded 14 files from the computer that seemed consistent with child pornography. The file names included: (1) Photo by Carl—pedo incest 13yr girl f****d by daddy (2) Pedo 13Yo Haley.jpg; (3) fdsa7-10 girl and 6yo boy pedo R%40 ygold hyssfan lolitaguy . . . baby shivid.mpg; (4) 5yo Girl Raped By Mommy; and (5) 8yo Preteen Girl Raped by 16yo Brother. Among the 14 files downloaded from the computer, Agent Cecchini observed a nude prepubescent female being vaginally penetrated by a young male's penis; a nude prepubescent female with an adult penis touching her vaginal area; and a nude prepubescent female with her underwear down and her legs spread.

Pursuant to a subpoena, Cox Communications, the Internet provider, identified the subscriber using the IP address 24.252.31.129 as "Harold Stults, 8042 Maywood Street, Omaha, Nebraska." A public records check using LexisNexis, a postal service mail delivery check, and a motor vehicle registration check all confirmed that a "Harold Stults" was the resident of 8042 Maywood Street.

Agent Morral received the warrant to search Stults's residence, and, when the search warrant was executed, agents seized hard drive towers, computer storage media, and various documents from the residence. Forensic analysis revealed 60 videos and numerous images of child pornography on Stults's computer. The files were stored on the C:drive and on compact disks. The videos and images were sent to the National Center for Missing and Exploited Children (NCMEC). NCMEC identified one movie and 71 image files as portraying known child victims. Many of the images involved prepubescent children. Two of the videos portrayed sadistic or masochistic conduct or depictions of violence. One video portrayed an apparent ten-year-old female whose hands and legs were bound providing oral sex to an adult male. A second video portrayed a 12-year-old girl bound in red rope being digitally penetrated.

When confronted by law enforcement, Stults admitted to using LimeWire to download music and pornography; using the search terms "pthc," "young girls," and "pre teen" to download child pornography; keeping the pornography in his shared folders; and recently viewing child pornography a few days earlier.

Stults was charged with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Because he had previously been convicted in November 1993 of attempted sexual assault of a child, he was subject to a ten-year mandatory minimum and 20-year maximum sentence pursuant to 18 U.S.C. § 2252(b)(2).[2]

---

[2]According to the presentence investigation report (PSR), the attempted sexual assault conviction involved Stults's 11-year-old niece. The niece reported that Stults carried her into his bedroom, removed her clothes, and laid her on the floor. She reported that he then began to fondle her breasts, rub her vaginal area with his hands, and place his mouth on her vaginal area. She also said that he had rubbed his penis against her vagina and stopped when her mother knocked on the door. Stults was convicted in the district court of Douglas County, Nebraska, for attempted sexual assault. He received a sentence of two to three years' imprisonment.

Stults filed a motion to suppress all evidence obtained as a result of the execution of the federal search warrant at his residence. The initial motion to suppress challenged the validity of the warrant's issuance. Stults contended that the affidavit failed to set forth sufficient facts and circumstances to justify a belief that evidence of a crime would be located at Stults's residence. Stults later supplemented his motion, alleging that the federal search warrant was obtained following an illegal P2P search of his home computer. According to Stults, Agent Cecchini conducted a warrantless search when he viewed the files from IP address 24.252.31.129, Stults's IP address, after Agent Cecchini launched the P2P program searching for child pornography. Stults argued that Agent Cecchini was able to determine the contents of Stults's computer, retrieve files from his computer, and view those files at a distant location without Stults's consent. Stults asserted that without the information from the P2P search information, the search warrant for his premises or computer files could not have been supported by probable cause.

The magistrate judge recommended to the district court that it deny Stults's motion to suppress, finding that sufficient probable cause existed to believe that the items sought in the application and affidavit would be found on the premises to be searched. In the alterative, the magistrate judge found that the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984), would apply, allowing for the admissibility of the evidence seized.

The district court adopted the magistrate judge's report and recommendation denying the motion to suppress. First, the district court found that "[t]here is no

Additionally, Stults had previously been sentenced to a six to ten-year term of imprisonment in June 1998 for burglary. According to the arrest report, Stults was found shirtless in the basement bedroom of a residence. Two pairs of adult and one pair of children's underwear were found in his pockets. He admitted to entering the basement and taking two pairs of ladies' underwear. He claimed to have received the child's underwear at a party that he had attended earlier.

reasonable expectation of privacy in computer files that are accessible to users of a computer network." *United States v. Stults*, 2007 WL 4284721, at *1 (D. Neb. Dec. 3, 2007) (unpublished). As a result, the district court "agree[d] with the magistrate's assessment that the warrantless downloading of files from defendant's computer by law enforcement officers did not implicate Fourth Amendment concerns." *Id*. The district court also reviewed the search warrant and found that it contained probable cause to support the search. *Id*. at *2. Furthermore, the court found that even if the affidavit was not sufficient to establish probable cause, "there has been no showing that any of these exceptions to the operation of *Leon* apply to this case." *Id*.

Thereafter, Stults entered a conditional plea of guilty. The conditional plea reserved the right to appeal the adverse decision of the district court denying the motion to suppress.

The United States Probation Office prepared a PSR. The PSR calculated a base offense level of 18. The PSR stated that the following enhancements applied: (1) a two-level increase for material depicting prepubescent minors; (2) a five-level increase for distribution for a thing of value but not for pecuniary gain; (3) a four-level increase for material that portrays sadistic or masochistic images; (4) a two-level increase for use of a computer; and (5) a five-level increase for possessing more than 600 images. The enhancements produced an adjusted offense level of 36. After subtracting three levels for acceptance of responsibility, the PSR reported a total offense level of 33. Stults's seven criminal history points placed him in a criminal history category IV. At a total offense level 33 and a criminal history category IV, Stults's Guidelines range was 188 to 235 months.

Prior to sentencing, Stults objected to the mandatory minimum sentence, arguing that his plea of nolo contendere failed to establish that the attempted sexual assault on a child was a conviction relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct. Second, Stults objected to the five-level enhancement for

distribution in exchange for a thing of value and to the assessment of a two-level enhancement for use of a computer. Finally, he requested a variance from the Guidelines, arguing that the enhancements should be disregarded because they were not the result of empirical research by the United States Sentencing Commission.

The district court found that the PSR properly calculated Stults's Guidelines range and overruled his objections. It sentenced Stults to 144 months' imprisonment, followed by a lifetime of supervised release. The district court also imposed a number of special conditions of Stults's supervised release. Stults objected to the following special conditions:

4. The defendant shall have no contact, nor reside with children under the age of 18, including his own children, unless approved in advance and in writing by the probation officer in consultation with the treatment providers. The defendant must report all incidental contact with children to the probation officer and treatment provider.

5. The defendant shall not access or come within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance and in writing by the probation officer.

***

7. The defendant shall not access, view or possess any pornographic sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services. The defendant shall not patronize any place where such material or entertainment is available without express permission of the United States Probation Office.

***

12. Except for purposes of his employment, the defendant is prohibited from using or having access to any electronic media that has internet service or photography capability without express permission from United States Probation Office. The defendant will sign any and all releases of information as it relates to cell phone carriers.

The district court overruled Stults's objections to the supervised release conditions.

## II. *Discussion*

Stults raises six arguments on appeal. First, he argues that his Fourth Amendment rights were violated because law enforcement conducted an illegal search of his computer without a warrant or a valid exception to the warrant requirement. Second, he asserts that the affidavit submitted in support of the search warrant was the fruit of the illegal search and was insufficient to establish probable cause. Third, he contends that his prior conviction for attempted sexual assault in the second degree is not a predicate offense that triggers the ten-year mandatory minimum sentence under 18 U.S.C. § 2252(b)(2). Fourth, he maintains that the district court erred in applying a five-level enhancement for distribution for receipt of a thing of value under U.S.S.G. § 2G2.2(b)(3)(B). Fifth, he argues that his 144-month sentence is unreasonable because it is greater than necessary to promote the goals of 18 U.S.C. § 3553(a). Finally, he contends that four of the special conditions of supervised released imposed by the district court constitute a deprivation of liberty more burdensome than necessary to serve federal sentencing goals.

### A. *Legality of Search of Stults's Computer*

Stults first argues that his Fourth Amendment rights were violated when the government conducted a warrantless search of his home computer.

In response, the government asserts that the district court properly denied Stults's motion to suppress because Stults' use of LimeWire, a P2P file-sharing

network, belies a reasonable expectation of privacy in the files searched; therefore, the Fourth Amendment is not implicated when a law enforcement officer browses or downloads files from a computer that is sharing files with other networks on a file-sharing network.

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Clarke*, 564 F.3d 949, 958 (8th Cir. 2009) (internal quotations and citations omitted). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *Id.* (internal quotations and citations omitted).

"When moving to suppress evidence on the basis of an alleged unreasonable search, the defendant has the burden of showing a legitimate expectation of privacy in the area searched." *United States v. James*, 534 F.3d 868, 872 (8th Cir. 2008) (internal quotations and citation omitted). "Whether a defendant has a constitutionally protected expectation of privacy involves a two-part inquiry—the defendant must show that (1) he has a reasonable expectation of privacy in the areas searched or the items seized, and (2) society is prepared to accept the expectation of privacy as objectively reasonable." *Id.* at 872–73 (internal quotations and citation omitted). Here, we must decide whether Stults had both a subjective and objectively reasonable expectation of privacy in files accessed through Stults's installation and use of LimeWire, P2P file-sharing software.

"LimeWire is a peer-to-peer file sharing application that connects users who wish to share data files with one another." *United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009). It is "indifferent to the nature of the data-images or text or music or video or software. [It is] equally indifferent to the legal status of the data-public-

domain or copyrighted or contraband." *Id*. "LimeWire combines two functions: the ability to search for and download files from other users, and the ability to make files on one's own computer available to other users." *Id*. When a user wants to download files from other users, he "launches LimeWire and inputs a search term or terms. The application then seeks matches for those terms in the file names and descriptions of all files designated for sharing on all computers then running the LimeWire application . . . ." *Id*. LimeWire will then "display[] a list of file names that match the search terms, and the user can select one or more of those to begin downloading the files." *Id*.

Several federal courts have rejected the argument that an individual has a reasonable expectation of privacy in his or her personal computer when file-sharing software, such as LimeWire, is installed. *See, e.g.*, *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008) (holding that the defendant lacked a reasonable expectation of privacy in the downloaded files stored on his computer, meaning that an agent's use of a file-sharing software program to access child pornography files on the computer did not violate the defendant's Fourth Amendment rights); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008) (holding that defendant had no expectation of privacy in government's acquisition of his subscriber information, including his IP address and name from third-party service providers, where the defendant voluntarily transmitted such information to Internet providers and enabled P2P file sharing on his computer, which permitted anyone with Internet access the ability to enter his computer and access certain folders); *United States v. Barrows*, 481 F.3d 1246, 1249 (10th Cir. 2007) ("[The defendant] claims that he invited no one to use his computer and therefore expected its contents to remain private. Yet he surely contemplated at least some third-party access: he knowingly networked his machine to the city computer for the express purpose of sharing files."); *United States v. Brese*, No. CR-08-52-D, 2008 WL 1376269, at *2 (W.D. Okla. April 9, 2008) (unpublished) ("The Court finds that, notwithstanding any subjective expectation that Defendant may have had in the privacy of his computer, it was not reasonable for him to expect

-10-

privacy in files that were accessible to anyone else with LimeWire (or compatible) software and an internet connection."); *United States v. Borowy*, 577 F. Supp. 2d 1133, 1136 (D. Nev. 2008) ("In this case, [the defendant] did not have a legitimate expectation of privacy in files he made available to others using P2P software.").

We hold that Stults had no reasonable expectation of privacy in files that the FBI retrieved from his personal computer where Stults admittedly installed and used LimeWire to make his files accessible to others for file sharing. One who gives his house keys to all of his friends who request them should not be surprised should some of them open the door without knocking. As a result, "[a]lthough as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer, we fail to see how this expectation can survive [Stults's] decision to install and use file-sharing software, thereby opening his computer to anyone else with the same freely available program." *Ganoe*, 538 F.3d at 1127 (internal citation omitted). Even if we assumed that Stults "did not know that others would be able to access files stored on his own computer," Stults did know that "he had file-sharing software on his computer; indeed, he admitted that he used it—he says to get music [and to download pornography]." *Id*. As a result, Stults "opened up his download folder to the world, including Agent [Cecchini]." *Id*. "Having failed to demonstrate an expectation of privacy that society is prepared to accept as reasonable, [Stults] cannot invoke the protections of the Fourth Amendment." *Id*.

### B. Probable Cause To Support Search Warrant

Stults next argues that the affidavit submitted by law enforcement in support of the application for a search warrant was lacking in probable cause and that the *Leon* good-faith exception does not apply.

In response, the government contends that Stults's facial validity challenge to the warrant fails because law enforcement agents were able to download child pornography from Stults's computer and the affidavit recounted this information, thereby providing sufficient probable cause for the issuance of the warrant.

"To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (internal quotations and citation omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009) (internal quotations and citations omitted)."Whether a search warrant is supported by probable cause is determined by the totality of the circumstances; resolution of the question by an issuing judge should be paid great deference by reviewing courts." *United States v. Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009) (internal quotations and citations omitted). Our duty "is to ensure that the issuing judge had a substantial basis for concluding that probable cause existed." *Id*. (internal quotations and citations omitted). "Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) (internal quotations and citation omitted).

Here, the magistrate judge found that the application and affidavit: (1) "described a method of communication known as peer-to-peer (P2P) computer file sharing using the worldwide Internet"; (2) "described how individuals wishing to share child pornography use the P2P method to share and trade digital files containing images of child pornography"; (3) "described Agent Morral's experience and training in computer usage and investigation of child pornography cases"; (4) "incorporated details of an investigation by [Agent Cecchini] . . . who accessed a P2P file designated Lime[W]ire" and "conducted a search looking for users accessing known child pornography sites; (5) stated that an IP address traced to Stults was identified as accessing child pornography sites; and (6) recounted that shared files from Stults's computer were downloaded and reviewed and were identified as containing "numerous images of child pornography." *United States v. Stults*, No. 8:07-CR-199, 2007 WL 3275129, at *2 (D. Neb. Nov. 2, 2007) (unpublished). Based on these facts,

-12-

the district court adopted the magistrate judge's recommendation that "the search warrant at issue . . . contains probable cause to support the search." *Stults*, 2007 WL 4284721, at *2.

We affirm the district court's conclusion that the affidavit in support of the search warrant was supported by probable clause. The information contained in the affidavit shows that, through the P2P file-sharing program, Agent Cecchini was able to access and download files directly from Stults's computer that contained child pornography images. As a result, a fair probability existed that contraband would be found at Stults's residence in his personal computer. *See Palega*, 556 F.3d at 714.[3]

## C. *Mandatory Minimum*

Stults's third argument is that his prior conviction for attempted sexual assault on a child is insufficient to invoke the ten-year mandatory minimum sentence under 18 U.S.C. § 2252(b)(2) because a conviction for *attempted* sexual assault on a child does not constitute "aggravated sexual abuse, sexual abuse, or abusive sexual conduct toward a minor or ward." According to Stults, had Congress intended a conviction for attempted sexual assault to trigger the increased penalty, it would have included such language in the statute. Furthermore, he asserts that his prior conviction is insufficient to invoke the mandatory minimum because it was based on a plea of nolo contendere.

In response, the government argues that the district court properly concluded that the crime of attempted sexual assault on a child is an offense "*relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor," thereby triggering the ten-year mandatory minimum. 18 U.S.C. § 2252(b)(2) (emphasis added).

_____

[3]"[W]e need not address whether the *Leon* good-faith exception applies because the warrant was supported by probable cause." *United States v. Abumayyaleh*, 530 F.3d 641, 648 (8th Cir. 2008).

Section 2252(b)(2) of 18 U.S.C. provides:

> Whoever violates, or attempts or conspires to violate, paragraph (4) of subsection (a) shall be fined under this title or imprisoned not more than 10 years, or both, but if such person has a prior conviction . . . under the laws of any State *relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward*, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

(Emphasis added.) Thus, if a defendant has a prior conviction under state law "'relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward,' he is subject to a mandatory minimum sentence of ten years (and the maximum statutory sentence is increased from ten to twenty years)." *United States v. McCutchen*, 419 F.3d 1122, 1125 (10th Cir. 2005) (quoting 18 U.S.C. § 2252(b)(2)).

"Unlike other sentencing enhancement provisions that specify a prior conviction must contain a certain element, § 2252(b)[(2)] contains no explicit reference to elements." *United States v. Weis*, 487 F.3d 1148, 1151 (8th Cir. 2007). Thus, the relevant "question is whether an offense is one 'relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor,' not whether any specific element is present." *Id.* at 1151–52. We apply a categorical approach "[t]o determine whether the prior offense qualifies as a predicate offense for the purpose of a sentence enhancement." *United States v. Sonnenberg*, 556 F.3d 667, 669–70 (8th Cir. 2009). "Under this approach, the sentencing court looks to the fact of conviction and the statutory definition of the prior offense and determines whether the full range of conduct encompassed by the state statute qualifies to enhance the sentence." *Id.* at 670.

If the statute criminalizes both conduct that would qualify a defendant for an enhancement, as well as conduct that would not do so, the court may refer to the charging document, the terms of a plea agreement, the transcript of the colloquy, jury instructions, and other comparable judicial records to determine the basis for the guilty plea or verdict.

*Id.*

A prior conviction "relates to" aggravated sexual abuse, sexual abuse, or abusive sexual contact "whether or not the statute under which [the defendant] was convicted required actual harm." *Weis*, 487 F.3d at 1152. "The phrase 'relating to' carries a 'broad' 'ordinary meaning,' i.e., ' 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .' '" *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979))) (holding that defendant's prior conviction for assault with intent to commit sexual abuse "related to" sexual abuse, as the prior conviction "required 'intent to commit sexual abuse'" and "[s]uch a mens rea demonstrate[d] the offense [was] one 'relating to' sexual abuse"). We have previously rejected a defendant's argument that "a state statute must criminalize only sexual acts involving physical touching to be 'relat[ed] to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward.'" *Sonnenberg*, 556 F.3d at 670 (quoting 18 U.S.C. § 2252(b)) (alteration in *Sonnenberg*). Instead, we have defined "sexual abuse of a minor" to mean "a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." *Id.* at 671 (internal quotations and citations omitted) (holding that defendant's prior conviction for committing lascivious acts with children "st[ood] in some relation to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward").

The Fifth Circuit has held that a defendant's prior state conviction "for *attempting* to make a series of lewd or indecent proposals to engage in unlawful

-15-

sexual relations with a person he believed to be a fourteen-year-old girl" "related to" aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor, even though no actual minor and no actual sexual activity were involved. *United States v. Hubbard*, 480 F.3d 341, 343, 346–47 (5th Cir. 2007) (emphasis added). According to the court:

> *Prior federal convictions for which the mandatory minimum sentence is imposed are not limited to offenses in which there was actual sexual contact between a defendant and the victim.* We discern no intent on the part of Congress to impose such a limitation with regard to prior convictions under state law. Some of the non-contact conduct criminalized by the foregoing federal statutes would also constitute criminal conduct under many states' laws "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor."
>
> Additionally, § 2252A(b)(1) refers to prior convictions under state laws "relating to" abusive sexual conduct involving a minor, among other offenses. We must assume that Congress chose the words "relating to" for a purpose. As the Supreme Court said in another context in *Morales v. Trans World Airlines*, [504 U.S. 374, 383 (1992)], "The ordinary meaning of these words [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979) . . . ."

*Id*. at 347 (emphasis added).

Here, Stults pleaded nolo contendere to the charge of attempted sexual assault of a child in the second degree in Nebraska state court.[4] Given the broad meaning of

---

[4]Under § 28-320(1) of the Nebraska Revised Statutes, sexual assault in the second degree occurs when a person "subjects another person to sexual contact (a) without consent of the victim, or (b) who knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her

"relating to," and in light of the Fifth Circuit's persuasive holding in *Hubbard* with regard to prior convictions for attempt, we hold that Stults's conviction for attempted sexual assault of a child in the second degree clearly "stands in some relation to" or "pertains to" the crimes of aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor.

Moreover, Stults's assertion that his prior conviction is insufficient to invoke the mandatory minimum because it was based on a plea of nolo contendere is without merit because Stults's plea "resulted in a finding of guilt." *United States v. Storer*, 413 F.3d 918, 922 (8th Cir. 2005) ("Because Congress provided no explicit language to the contrary in § 2252A(b)(2), we apply federal law to conclude that [the defendant's] Florida felony offense and nolo contendere plea, which resulted in a finding of guilt

---

conduct." "Sexual assault" is "in the second degree . . . if the actor [causes] serious personal injury to the victim." *Id*. § 28-320(2). Under § 28-320.01, "[a] person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." In turn, "sexual contact" is defined as:

> the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party. Sexual contact shall also include the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child under sections 28-319.01 and 28-320.01 . . . .

Neb. Rev. Stat. § 28-318(5).

with adjudication withheld, qualifies as a conviction for purposes of § 2252A(b)(2)'s mandatory minimum ten-year sentence of imprisonment.").

## D. *Distribution for Receipt of a Thing of Value*

According to Stults, the district court committed procedural error in applying the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. Specifically, he asserts that insufficient evidence exists to show that he was aware that LimeWire would permit others to receive images from his computer.

But the government contends that Stults's argument is without merit because the law of this circuit is that the enhancement *automatically* applies to a defendant who downloads and shares child pornography via a P2P file sharing network, as these networks exist for the purpose of users sharing files with one another. In the alternative, the government argues that even if the enhancement is not automatic, the district court took the additional step of finding that Stults was sufficiently computer savvy to know that he was allowing the distribution of child pornography.

"On appeal, our first task is to ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008) (internal quotations and citation omitted). "A non-harmless error in calculating the guidelines range requires a remand for resentencing." *Id*.

Section 2G2.2(b)(3)(B) provides for a five-level enhancement for "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." "'Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain' means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." U.S.S.G. § 2G2.2 n.1. "'Thing of value' means anything of valuable consideration. For example, in a

case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." *Id*. "'Distribution' means any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." *Id*. Thus, "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." *Id*.

In *United States v. Griffin*, we held, as a matter of first impression, that a five-level enhancement for the distribution of child pornography for the receipt, or the expectation of receipt, of a thing of value, but not for pecuniary gain applied to a defendant who downloaded and shared child pornography files via an Internet P2P file-sharing network. 482 F.3d 1008, 1013 (8th Cir. 2007). In *Griffin*, police, pursuant to a search warrant, seized a computer from a residence. *Id*. at 1010. Forensic analysis of the computer showed that a partially downloaded file containing child pornography had been downloaded to the computer from an IP address traced to the defendant. *Id*. Local police executed a search warrant on the defendant's residence and seized a computer and several CD-ROMs containing approximately 67 video clips of child pornography. *Id*. The defendant pleaded guilty to receiving and possessing child pornography, in violation of 18 U.S.C. §§ 2552(a)(2) and (a)(4)(B). *Id*.

The PSR concluded that the defendant was subject to a five-level enhancement pursuant to § 2G2.2(b)(2)(B) because the defendant's offense conduct involved the distribution of child pornography "'for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain.'" *Id*. (quoting § 2G2.2(b)(2)(B)). The defendant objected to the enhancement, "denying that he distributed any child pornography and arguing that even if a distribution occurred, he did not distribute the images for the receipt, or the expectation of receipt, of a thing of value." *Id*. Although the defendant admitted to downloading child pornography from Kazaa—an Internet P2P file-sharing

network—he argued that he only downloaded the images and videos for his personal use, not for distribution to others. *Id.* But the defendant also admitted that he knew that Kazaa was a file-sharing program and knew that, by using it, other Kazaa users could also download files from his computer. *Id.* According to the government, the defendant's use of Kazaa "with knowledge of its capabilities constituted distribution. By using the file-sharing site, [the defendant] enabled other Kazaa users to download files from [his] shared folder, including any child pornography files stored there." *Id.*

At an evidentiary hearing on the enhancement, the defendant admitted to being the primary user of the computer and that he had downloaded child pornography to his computer using Kazaa. *Id.* An officer also testified that the defendant had admitted to knowing that by using Kazaa he would be able to download files from other Kazaa users and that other Kazaa users would be able to download files from him. *Id.* But the officer did admit that when the defendant's computer was seized, the Kazaa program and the defendant's shared folder had been deleted from the computer, making the defendant unable to distribute images via Kazaa at that time. *Id.* at 1010–11. The officer also testified that forensic analysis had recovered several deleted child pornography files on the computer and that the defendant's IP address was attached to the partially downloaded child pornography file. *Id.* at 1011. This IP address established that the partially downloaded file had previously been on the defendant's computer, was available for distribution, and was distributed. *Id.*

On appeal, the issue before us was "whether an expectation of receipt of child pornography through Kazaa file sharing constitutes a 'thing of value, but not for pecuniary gain' for sentence enhancement purposes under § 2G2.2(b)(2)(B)." *Id.* We noted that the defendant's "use of the peer-to-peer file-sharing network made the child pornography files in his shared folder available to be searched and downloaded by other Kazaa users as evidenced by the partially downloaded files recovered by Danish authorities." *Id.* at 1012. As a result, we concluded that the defendant "was engaged in the distribution of child pornography." *Id.*

We then addressed whether the defendant's "use of a file-sharing network to obtain child pornography from other network users, while allowing the child pornography files in his shared folder to be accessed and downloaded by others, constituted 'distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain' under § 2G2.2(b)(2)(B)." *Id*. We held that, *under the relevant facts*, the government sufficiently proved that the defendant "expected to receive a thing of value—child pornography" by using Kazaa. *Id*. at 1013.

Recently, the Tenth Circuit declined to follow our holding in *Griffin*, based on its *interpretation* that *Griffin* mandates that "by sharing files on a file-sharing network, a defendant necessarily expects to receive a 'thing of value.'" *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007). Our holding in *Griffin* that "§ 2G2.2(b)(2)(B)'s five-level enhancement for the distribution of child pornography 'for the receipt, or the expectation of receipt, of a thing of value, but not for pecuniary gain' applies to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network" was inseparable from our conclusion that "the government met its burden of establishing that [the defendant] expected to receive a thing of value—child pornography—when he used the file-sharing network to distribute and access child pornography files" by introducing the defendant's admissions. 482 F.3d at 1013. Specifically, the defendant in *Griffin* admitted that he "downloaded child pornography files from Kazaa, knew that Kazaa was a file-sharing network, and knew that, by using Kazaa, other Kazaa users could download files from him." *Id*. Thus, whether a defendant qualifies for the five-level enhancement must be decided on a case-by-case basis, with the government bearing the burden of proving that the defendant "expected to receive a thing of value—child pornography—when he used the file-sharing network to distribute and access child pornography files." *Id*.

Here, there is no *direct* evidence that Stults expected to receive child pornography when he used LimeWire, as was the case in *Griffin*. But the government met its burden of proof through *circumstantial* evidence. The district court reasonably

deemed Stults, who is technically sophisticated in computer use, with knowing that he was distributing child pornography through his use of LimeWire. The district court cited the following facts in support of its determination that Stults's level of computer proficiency supported a finding that he knew how LimeWire worked: (1) Stults has a number of computers (two to three towers); (2) Stults had a large database; (3) Stults had saved substantial data obtained from other LimeWire users and kept it on CD-ROMs; (4) Stults's computer contained many images; and (5) a lot of data was in Stults's machine. In light of this circumstantial evidence, "we conclude there was sufficient evidence in the record to support the district court's ultimate finding and that it was not clearly erroneous." *United State v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009).

### E. *Reasonableness of Sentence*

Stults maintains that even if this court finds that the district court's sentence is not procedurally flawed, it remains a substantively unreasonable sentence because it is greater than necessary to promote the goals of 18 U.S.C. § 3553(a).

In response, the government points out that the district court sentenced Stults well below the advisory Guidelines range of 188 to 235 months to 144 months' imprisonment.

"Absent reversible procedural error, we . . . review the reasonableness of the court's sentence for abuse of discretion." *Vickers*, 528 F.3d at 1120. Where the district court in imposing a sentence makes "an individualized assessment based on the facts presented," addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007) (in reviewing sentence for abuse of discretion, appeals court must first ensure there was no significant procedural error, and then assess substantive reasonableness of sentence); *see also United States v. Haack*, 403 F.3d 997, 1004 (8th Cir.2005) (listing circumstances that may warrant finding of abuse of discretion).

-22-

Here, the district court issued a sentencing memorandum in which it thoroughly discussed all of the § 3553(a) factors. Furthermore, at the sentencing hearing, the district court adequately explained why it was sentencing Stults *below* the applicable Guidelines range of 188 to 235 months. Accordingly, we hold that a sentence of 144 months' imprisonment is not substantively unreasonable.

### F. *Special Conditions of Supervised Release*

Stults's final argument is that four of the special conditions that the district court imposed constitute a deprivation of liberty more burdensome than necessary to serve federal sentencing goals. Specifically, Stults objects to special conditions 4, 5, 7, and 12, which prohibit him from (1) having contact or residing with children under the age of 18, including his own children, unless approved in advance and in writing by the probation officer in consultation with the treatment providers; (2) accessing or coming within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance and in writing by the probation officer; (3) accessing, viewing, or possessing any pornographic sexually-oriented or sexually-stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services and patronizing any place where such material or entertainment is available without the express permission of the United States Probation Office; and (4) except for purposes of his employment, using or having access to any electronic media that has Internet service or photography capability without the express permission from the United States Probation Office.

In response, the government asserts that the district court did not abuse its discretion in imposing the aforementioned special conditions because restricting Stults from contact with children and limiting his access to the Internet are reasonable measures to protect society, in light of Stults's sex-related felony convictions.

"It is fundamental that a district judge has wide discretion in formulating the terms of supervised release." *United States v. Levering*, 441 F.3d 566, 569 (8th Cir. 2006) (internal quotations and citation omitted). But such discretion "is limited by the requirement that the conditions be reasonably related to § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission." *Id*. (internal quotations and citation omitted). "We review the district court's imposition of special conditions of supervised release for abuse of discretion." *Id*. Applying this standard of review, we will consider each one of Stults's objections in turn.

## 1. *Special Condition 4*

Special condition 4 provides that Stults "shall have no contact, nor reside with children under the age of 18, including his own children, unless approved in advance and in writing by the probation officer in consultation with the treatment providers." If Stults has "incidental contact with children," he must report such contact "to the probation officer and the treatment provider."

Stults argues that this condition "prohibits a host of benign and commonplace contact." According to Stults, "[s]uch a broad prohibition is unnecessary given the restrictions that are already imposed upon Stults as a convicted sex offender."

In response, the government points out that special condition 4 permits Stults to have contact with children under the age of 18 if he secures the approval of his probation officer. According to the government, "[c]hildren are members of the public that the terms of supervised release seeks to protect," and, given Stults's criminal past, such condition "is reasonably necessary to protect the public and is not overly restrictive."

We have previously upheld special conditions substantially similar to special condition 4 with regard to defendants who have pleaded guilty to possessing or

-24-

receiving child pornography. *See, e.g.*, *United States v. Mickelson*, 433 F.3d 1050, 1057 (8th Cir. 2006) (upholding as reasonable a special condition preventing the defendant, who pleaded guilty to receiving child pornography, from having contact with anyone under the age of 18 without the express written permission of the probation officer); *United States v. Mark*, 425 F.3d 505, 507–08 (8th Cir. 2005) (upholding as reasonable special condition prohibiting the defendant, who was convicted of possessing child pornography, from having any contact with, or residing with, any children under 18 years of age, including his own children, unless the probation officer gave prior approval in writing); *United States v. Crume*, 422 F.3d 728, 733–34 (8th Cir. 2005) (rejecting the argument of defendant, who was convicted of knowingly receiving child pornography, that the special condition prohibiting him from "contact with children under the age of eighteen without the written consent of his probation officer" was an "unnecessary deprivation of his liberty interest in having contact with his own children" because the condition did not completely bar him from interacting with his children); *United States v. Vick*, 421 F.3d 794, 795 (8th Cir. 2005) (upholding a supervised release condition that prohibited the defendant, who was convicted of possessing child pornography, from having any contact with children under the age of 18, including his daughter, unless he received prior written approval from his probation officer because the condition was tailored to the defendant's "extensive history with minors, was reasonably related to the nature of seriousness of his offense, and was needed to deter [the defendant] and protect the public").

Therefore, in light of this court's precedent, we hold that the district court did not abuse its discretion in imposing special condition 4.[5]

---

[5]"In the case of an association restriction, [we note that] the Third Circuit determined the district court's delegation of 'absolute authority to the Probation Office to allow any such contacts while providing no guidance whatsoever for the exercise of that discretion' was untenable." *United States v. Rodriguez*, 558 F.3d 408, 416 (5th Cir. 2009) (quoting *United States v. Voelker*, 489 F.3d 139, 154 (3d Cir. 2007)). In *Voelker*, the Third Circuit concluded that "[b]ecause the defendant had been sentenced

## 2. *Special Condition 5*

Special condition 5 provides that Stults "shall not access or come within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance and in writing by the probation officer."

Stults objects to this special condition, asserting that it "not only prohibits him from *residing* within 500 feet of a school or child[c]are center" but also" prohibits him from *coming within* 500 feet of *any* place used primarily by children at *any* time for *any* reason." According to Stults, such a condition is a far greater deprivation of liberty than is reasonably necessary to fulfill the federal sentencing goals.

In response, the government notes that the district court included the qualifier "except when approved in advance and in writing by the Probation Office" to the special condition. And, it also cites the district court's response to Stults's objection to the special condition, in which the district court stated:

> If he drives to work every day and he goes down Dodge Street every day, which is a main thoroughfare, and that's within 500 feet of a school, or park, which it may be, then he can get permission to drive to and from work, but otherwise I would suggest that he change his route.

to a lifetime of supervised release," "designating the probation officer the sole authority for deciding if the defendant could ever have unsupervised contact with any minor, including his own children, was an impermissible 'unbridled delegation of authority.'" *Id*. (quoting *Voelker*, 489 F.3d at 154). Here, Stults never objected to any of the special conditions on the grounds that they were imposed for a lifetime; accordingly, we need not address the effect of the district court sentencing Stults to a lifetime of supervised release.

In light of the district court's comments, the government concludes that the condition "does not prohibit Stults from living, working, or driving to such places as he may do so if he secures the approval of the Probation Officer."

This court has not previously addressed the *exact* condition at issue here, but we have addressed similar conditions. First, in *United States v. JoDon*, the defendant, who pleaded guilty to transportation of obscene matter, challenged "the district court's imposition of special conditions of supervised release barring [the defendant] from engaging in activities providing access to children, loitering near certain areas frequented by children, or having a post office or private mail box, without his probation officer's earlier approval." 19 Fed. Appx. 443, 444 (8th Cir. 2001) (unpublished per curiam). Rejecting the defendant's challenge, we held that "the challenged conditions are reasonably related to his crime and his rehabilitation, they are intended to protect the public from this convicted sexual offender, and they involve no greater restraint of liberty than reasonably necessary to accomplish their purposes." *Id.*

Second, in *United States v. Ristine*, the defendant, who pleaded guilty to receiving child pornography, challenged a special condition barring him "from places where minor children under the age of 18 congregate, such as residences, parks, beaches, pools, daycare centers, playgrounds, and schools without the prior written consent of the probation officer," arguing that such condition "is vague and could be read to ban him from all parks, beaches, and pools; if read in this manner, the restriction would be overbroad." 335 F.3d 692, 696 (8th Cir. 2003) (internal quotations omitted). We upheld the condition, finding that its purpose was "to limit [the defendant's] access to children. It is therefore sensible for the condition to restrict [the defendant's] presence at places where children are actually present." *Id.*

Third, in *United States v. Kerr*, the district court imposed a condition of supervised release that required the defendant, who was convicted of possession and

distribution of child pornography, "to obtain permission from the probation office prior to contacting minors or going to places where minors congregate." 472 F.3d 517, 520 (8th Cir. 2006). In upholding this condition, we observed that "[t]he undisputed evidence demonstrates [that the defendant] possessed and distributed child pornography, some depicting the sadistic and violent sexual abuse of pre-teen minors." *Id.* at 522. We noted that "[t]his court has, in several instances, upheld similar conditions limiting contact with minors in child pornography possession cases, albeit in cases involving defendants with records of sexual abuse of minors." *Id.* (citing *Mark*, 425 F.3d at 508; *Crume*, 422 F.3d at 734; *United States v. Heidebur*, 417 F.3d 1002, 1004 (8th Cir. 2005)). We found that "the absence of such a history [of sexually abusing minors] is not necessarily determinative when deciding whether the district court erred in imposing contact conditions." *Id.* at 523 (citing *Mickelson*, 433 F.3d at 1051). As a result, we held that although the defendant had no history of abusing minors, "his offenses include both the possession and distribution of child pornography" and that such "offenses are more serious than mere possession offenses." *Id.* We pointed out that the defendant admitted to "distributing child pornography and also admits he possessed pornography depicting children under twelve and sadomasochistic violence." *Id.* Additionally, we found it relevant that the condition did not prohibit the defendant from contacting minors or entering places where minors congregate "so long as he obtains prior permission from the probation office. Furthermore, because [the defendant was] childless, he [was] not restricted from contacting his own children." *Id.* Therefore, we held that "these contact conditions are not unreasonably restrictive given the circumstances . . . ." *Id.*

In the present case, we hold that special condition 5 is not an impermissible deprivation of Stults's liberty. First, we have upheld special conditions (1) prohibiting a defendant from "loitering" near areas frequented by children, *JoDon*, 19 Fed. Appx. at 444, and (2) barring the defendant from places where children "congregate," including "residences, parks, beaches, pools, daycare centers, playgrounds, and schools," *Ristine*, 335 F.3d at 696. Similarly, Stults is prohibited from coming within

500 feet of "schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children."

Second, like the defendant in *Kerr* who was prohibited from "going to places where minors congregate," 472 F.3d at 520, the evidence shows that Stults possessed child pornography, "some depicting the sadistic and violent sexual abuse of pre-teen minors." *Kerr*, 472 F.3d at 522. Furthermore, unlike the defendant in *Kerr*, Stults *does* have a history of sexually abusing minors, as he was previously convicted of attempted sexual assault of a child. The PSR recounts that this conviction involved Stults's 11-year-old niece and that, according to the niece, Stults did, in fact, sexually abuse her.

Third, as in *Kerr*, special condition 5 is not a *complete* prohibition on Stults coming within 500 feet of places used primarily by children; instead, it provides that Stults may come within 500 feet of such places if "approved in advance and in writing by the probation officer." Conditions requiring the prior approval of a probation officer are "consistently upheld." *Rodriguez*, 558 F.3d at 415 (holding that, in imposing supervised release conditions prohibiting defendant from associating with any minor child except in the presence and supervision of a specifically designated adult and prohibiting defendant from residing near schools, youth centers, and other enumerated institutions without prior approval, district court permissibly delegated to defendant's probation officer duties of designating supervising adult and of approving defendant's residence within restricted areas). We also note that Stults has not alleged that the district court "abdicated its judicial responsibility" in requiring the probation officer's prior approval. *See id.*

Finally, Stults asserts that special condition 5 is unreasonable because it prevents him from even coming within, as opposed to merely residing within, 500 feet of places primarily used by children. This condition is not unreasonable in light of Stults's individual characteristics as an offender. Stults has a history of sexually

-29-

abusing minors, as he was previously convicted of attempted sexual assault of a child. Additionally, the condition is not a blanket prohibition, as Stults may seek written advance permission from his probation officer. The probation officer may then exercise his discretion to allow Stults to come within 500 feet of the prohibited areas.

### 3. *Special Condition 7*

Special condition 7 prohibits Stults from "access[ing], view[ing] or possess[ing] any pornographic sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services" and from "patroniz[ing] any place where such material or entertainment is available without the express permission of the United States Probation Office."

On appeal, Stults argues that special condition 7 is too vague because the term "pornography" is "entirely subjective" and "lacks any recognized legal definition."

In response, the government relies on *United States v. Boston*, 494 F.3d 660 (8th Cir. 2007), in which this court upheld a special condition of supervised release prohibiting the defendant from viewing, possessing, or entering a location that sold any form of pornography or sexually explicit material deemed inappropriate by his probation officer or treatment staff.

As a threshold matter, we note that, at the sentencing hearing, Stults objected to special condition 7 not on the basis of vagueness but instead on the ground that the condition violated the First Amendment because it was overbroad, as it prohibited him from accessing lawful materials. Specifically, Stults's counsel stated, "[I]t seems to me if it's lawful material, then he would have a 1st Amendment right and another right to possess those types of materials." Our review of the sentencing transcript reflects that counsel never objected to the condition based on vagueness; therefore, we must review Stults's argument that the condition is unconstitutionally vague for plain error.

*See Ristine*, 335 F.3d at 694 ("When a defendant failed to raise a timely objection to those terms, however, our review is only for plain error.").

In *Ristine*, the defendant "challenge[d] [for the first time on appeal] a special condition of supervision that prohibit[ed] him from owning or possessing any pornographic materials," from using "any form of pornography or erotica," and from entering "into any establishment where pornography or erotica can be obtained or viewed." *Id.* (internal quotations omitted). The defendant argued that such restrictions were "overbroad and vague." *Id.* According to the defendant, the restrictions were overbroad because they "prevent[ed] him from accessing materials that he believe[d] he ha[d] a First Amendment right to view." *Id.* Additionally, he argued that the restrictions were vague because "they fail[ed] to give him adequate notice as to when he would violate the condition." *Id.* Applying plain error review, we rejected the defendant's argument. *Id.* First, we held that the defendant's "argument that the pornography-related restrictions [were] overbroad [was] without merit," as the record "demonstrate[d] [the defendant's] obsession with or addiction to child pornography." *Id.* Second, we recognized the defendant's "more powerful argument . . . that the vagueness of 'pornography' leaves him without notice as to what film, prose, and art he may view without violating the challenged condition" and noted a circuit split as to whether such conditions are unconstitutionally vague. *Id.* at 695 (citing *United States v. Loy*, 237 F.3d 251, 261, 266 (3d Cir. 2001) (striking down a condition banning a defendant from possessing "all forms of pornography, including legal adult pornography" because "without a more definitive standard to guide the probation officer's discretion, there is a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating"); *United States v. Phipps*, 319 F.3d 177, 192–93 (5th Cir. 2003) (upholding a condition that prohibited the defendants from possessing "sexually oriented or sexually stimulating materials")). But we upheld the condition, concluding that because "the current law concerning this issue is unsettled," the district court did not commit plain error in imposing the condition. *Id.* at 695.

-31-

*Ristine* is factually analogous and controls the result in this case, as Stults raised the vagueness argument for the first time on appeal. Therefore, we hold that the district court did not plainly err in imposing a ban on pornographic material as a condition of supervised release.

## 4. Special Condition 12

Special condition 12 provides that, "[e]xcept for purposes of his employment, the defendant is prohibited from using or having access to any electronic media that has internet service or photography capability without express permission from United States Probation Office."[6]

According to Stults, this condition "is far more restrictive than reasonably necessary to effectuate federal sentencing goals" because he merely possessed child pornography and no evidence exists that he used his computer to do anything more than merely possess such pornography.

In response, the government notes that Stults is not completely banned from accessing the Internet, as he can obtain the express permission of his probation officer; in addition, he can access the Internet for purposes of his employment. Also, the government maintains that although Stults was convicted for mere possession of child pornography, he (1) was subject to a ten-year mandatory minimum sentence based upon a prior conviction related to the sexual abuse of minors; (2) obtained child pornography and shared it through LimeWire, a P2P file-sharing network; and (3) possessed child pornography depicting bondage and penetration of adolescent girls.

"The widespread use of computers and the internet have provided new opportunities to deal in and view child pornography, and courts have fashioned some

---

[6]Special condition 12 also provides that Stults "will sign any and all releases of information as it relates to cell phone carriers." Stults did not object to this portion of the condition before the district court and likewise has not challenged it on appeal.

special conditions of release for defendants convicted of such crimes to place restrictions on their use of computers and the internet." *United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003). "In cases where defendants used computers or the internet to commit crimes involving greater exploitation, such restrictions have been upheld." *Id*. But "[a]ppellate courts have overturned conditions seen as overly restrictive, especially in cases involving simple possession of child pornography." *Id*. (upholding, under plain error review, special condition of supervised release prohibiting defendant, who was convicted of selling child pornography, from owning or operating any photographic equipment, including computers, scanners and printers; prohibiting defendant from having internet service in his residence; and barring defendant's possession of a computer unless permission was granted by probation officer because "[s]elling subscriptions to child pornography is more serious than a possessory offense" and "the conditions d[id] not constitute a total ban on his use of computers or the internet").

This court, on several occasions, has addressed special conditions of release similar to special condition 5. In *Ristine*, the defendant, who pleaded guilty to receiving child pornography, challenged special conditions that "prohibited [him] from owning or operating any photographic equipment, including, but not limited to, cameras, digital cameras, videotaping recorders, camcorders, computers, scanners, and printers" and "permit[ted] [the defendant] to possess a computer" as long as the defendant "consent[ed] to periodic unannounced examinations and inspections of his computer as well as to the installation of hardware or software that monitors his computer use." 335 F.3d at 695 (internal quotations omitted). "Even if [the defendant] [was] permitted to have a computer, he [was prohibited from having] Internet service at his residence." *Id*.

In *Ristine*, we addressed two considerations in determining whether imposition of the conditions was an abuse of discretion. First, we considered whether evidence existed "that the defendant did more than merely possess child pornography." *Id*. at

696. Second, we considered whether the defendant was "completely prohibited from using a computer." *Id.* Applying these considerations, we found that (1) the defendant "more than merely possessed images of child pornography—he exchanged the images with other Internet users, and he attempted to arrange sexual relations with underage girls" and (2) the defendant was not "wholly barred from using a computer." *Id.*

In contrast, we held in *United States v. Crume* that a condition of supervised release for knowingly receiving child pornography and knowingly possessing child pornography, which completely barred the defendant's access to computers and the Internet without first receiving written consent from his probation officer, was a greater deprivation of the defendant's rights than was reasonably necessary. 422 F.3d 728, 732–33 (8th Cir. 2005). In so holding, we distinguished *Fields* and *Ristine*, explaining:

> Although [the defendant] has a lengthy history of grievous sexual misconduct, *the record is devoid of evidence that he has ever used his computer for anything beyond simply possessing child pornography.* We are not convinced that a broad ban from such an important medium of communication, commerce, and information-gathering is necessary given the absence of evidence demonstrating more serious abuses of computers or the Internet. We are confident that the district court can impose a more narrowly-tailored restriction on [the defendant's] computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material.

*Id.* at 733 (emphasis added).

Although it is a close call, we think that this case is more like *Ristine* than *Crume* and hold that the special condition barring Internet access unless approved by the probation office is sufficiently tailored to the particular facts of this case. The same

facts and considerations that justify imposition of the five-level enhancement also support the district court's imposition of this condition of supervised release. The condition is not a blanket prohibition against all computer use. Stults will have unlimited access to computers for employment purposes. Plus, Stults may obtain permission from his probation officer and gain computer access for any and all other legitimate personal purposes.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____