# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2772
_____

United States of America

*Plaintiff - Appellee*

v.

Trenton Sliekers

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 15, 2022
Filed: July 13, 2022
[Unpublished]
_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.
_____

PER CURIAM.

Trenton Sliekers appeals his sentence of 96 months' imprisonment, challenging the extent of the district court's[1] upward departure under U.S.S.G. § 5K2.6. We affirm.

## I. *Background*

Officers were dispatched to a neighborhood after another officer heard six shots fired in the area. Upon their arrival, officers observed that a nearby residence had been hit with bullets damaging its exterior. One adult and three children were inside the residence at the time of the shooting. Officers saw bullet strikes on the outside of the residence, as well as damage to the interior walls and fixtures. They found one bullet lodged in a couch cushion on a couch on which one of the children was sitting when the shooting occurred. Another bullet was recovered from an interior wall. Officers were unable to locate yet another bullet that had gone through the interior wall.

Witnesses told officers that they saw an individual drive by on a motorcycle at the time of the shooting. Video footage from a nearby business showed an individual riding a motorcycle drive by and shoot at the residence.

Officers located Sliekers a few blocks away near a motorcycle matching the motorcycle in the video. Sliekers declined to answer the officers' questions. Upon Sliekers's arrest, officers searched him and discovered marijuana, two lock picks, and dozens of sets of keys appearing to be from a car lot and business. Additionally, prior to the officers' arrival, Sliekers had thrown a pair of gloves and a box of .38 special ammunition in a nearby bush. Sliekers had also hidden a handgun in a nearby mailbox. Officers found six spent .38 special shell casings in the area. Sliekers's DNA was located on the gloves and the handgun.

---

[1]The Honorable Charles J. Williams, United States District Judge for the Northern District of Iowa.

Sliekers was charged with being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). He pleaded guilty pursuant to a plea agreement. Prior to sentencing, the government moved for an upward departure from the advisory Guidelines range under U.S.S.G. § 5K2.6.

At sentencing, the district court calculated a total offense level of 15 and criminal history category of VI, resulting in an advisory Guidelines range of 41 to 51 months' imprisonment. The court then addressed the government's upward-departure motion. Sliekers agreed that an upward departure was appropriate but disputed the extent of the departure. The government sought an upward departure to 104 months' imprisonment. Sliekers requested an upward departure to 72 months' imprisonment, but not greater than 82 months' imprisonment.

In imposing Sliekers's sentence, the district court began by "consider[ing] all the factors at Title 18 United States Code Section 3553(a)." R. Doc. 52, at 20. First, the court reviewed Sliekers's offense conduct, which "involve[d] [Sliekers] riding on a motorcycle and firing six shots at a house occupied by a number of people, including children." *Id.* Sliekers discharged "a number of rounds." *Id.* The court concluded that Sliekers was "attempt[ing] . . . to intimidate somebody in that house," although his "motive [was] not clear." *Id.* After shooting into the home, the court noted, Sliekers "attempted to dispose of a firearm." *Id.* Second, the court analyzed Sliekers's history and characteristics. The court recognized that Sliekers's father was absent and had substance-abuse issues during Sliekers's childhood, that Sliekers has a history of substance abuse dating back to childhood, and that Sliekers had a history of mental health issues. The court also acknowledged that while Sliekers's employment history is "limited [and] episodic," in 2019 he "earned more than $52,000," demonstrating his capability to "work[] hard and earn[] a living and support[] his family when he puts his mind to it." *Id.* at 22. Third, the court "f[ou]nd [Sliekers's] criminal history to be quite troubling." *Id.* The court counted

9 juvenile convictions [and] 12 adult convictions. Of the adult convictions, at least 3 of them involve violence, 6 of them he committed while he was on probation or parole from the prior offense. He had 11 convictions that scored no criminal history points for various reasons. And he had 6 1-point offenses and only 4 of those can count for the number of points for criminal history, and yet he still was able to rack up 15 criminal history points and land in criminal history category VI despite that, and at a relatively young age of 28.

*Id.* This criminal history showed the court that Sliekers "is a violent man, that he does not control his behavior, that he just keeps committing crime after crime after crime." *Id.* at 23. According to the court, Sliekers continued violating the law "despite the fact that he's getting older and he has responsibilities as a father and as a husband." *Id.*

Fourth, the court concluded that Sliekers's "very serious criminal history . . . show[ed] that he is likely to reoffend and that he is a danger to the community." *Id.* To the court, this was "a major factor in . . . determining the appropriate sentence in this case under the [§] 3553(a) factors." *Id.*

After analyzing the § 3553(a) factors, the district court found that an upward departure under § 5K2.6 was warranted. In reaching this determination, the court considered "all the factors at [§] 3553(a) and the factors and the interests identified under [§ ] 5K2.6 . . . [to] determin[e] the extent of [the] upward departure." *Id.* The court stated, "I am going to depart upward *and alternatively vary upward by 6 levels*. That would give . . . a range of 77 to 96 months." *Id.* (emphasis added). "[C]onsidering all the factors at [§] 3553(a)," the court sentenced Sliekers to 96 months' imprisonment. The court explained why it "chose the top of the adjusted advisory guideline range," stating:

I don't find this to be a case where the defendant should have the presumption of a sentence at the bottom of whatever guideline range the Court reached. The defendant I think is a very dangerous person. His criminal history shows he's likely to reoffend, and that makes me

believe that a sentence at the top of the—of whatever the new advisory guideline range is . . . appropriate to protect the public and to reflect the seriousness of the defendant's criminal conduct here.

*Id.* at 24–25.

## II. *Discussion*

On appeal, Sliekers challenges the extent of the district court's upward departure under § 5K2.6.[2] He argues that while his discharge of the firearm was reckless, "it did not amount to attempted murder" and instead "most closely resembles attempt to commit manslaughter." Appellant's Br. at 9. He argues that the extent of the district court's upward departure was unreasonable. He contends that his acknowledgment that his conduct merited an upward departure shows his "extraordinary level of remorse." *Id.* He also notes that his most recent conviction involving violence occurred several years ago; his "personal history and characteristics" support a lesser sentence, and his childhood was merely "survivable." *Id.* at 9–10. He argues that "[a] 96[-]month[] sentence was unreasonable." *Id.* at 10.

"We review a district court's decision to depart or vary upward for abuse of discretion." *United States v. Todd-Harris*, 19 F.4th 1074, 1077 (8th Cir. 2021) (per curiam). We review for clear error a district court's factual findings in support of a departure or variance. *Id.* "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate

---

[2]Section 5K2.6 provides:

If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

factors but commits a clear error of judgment in weighing those factors." *Id.* (internal quotation marks omitted).

"We need not address whether the district court erred by departing under USSG § . . . 5K2.6, because the court said that it would impose the same sentence by varying upward under 18 U.S.C. § 3553(a)." *United States v. Shoulders*, 988 F.3d 1061, 1063 (8th Cir. 2021) (citing *United States v. Grandon*, 714 F.3d 1093, 1098 (8th Cir. 2013)). In evaluating the substantive reasonableness of a sentence "outside the advisory guideline range, we consider the extent of the deviation, giving 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* at 1064 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "District courts have wide latitude to weigh the sentencing factors and may give some greater weight than others, but a district court abuses its discretion when it gives significant weight to an improper or irrelevant factor." *Id.* (citations omitted).

We conclude that the district court did not abuse its discretion in imposing a 96-month sentence in the present case. The record demonstrates that the district court conducted "an individualized assessment based on the facts presented, addressing [Sliekers's] proffered information in its consideration of the § 3553(a) factors." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 50). The district court considered Sliekers's mitigating circumstances but ultimately concluded that Sliekers's extensive criminal history warranted an upward variance.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____