# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 09-2142

—————————

United States of America,

            Appellee,

v.

Jerry Lynn Simons,

            Appellant.

\* Appeal from the United States
\* District Court for the
\* District of Nebraska.

—————————

Submitted: March 10, 2010
Filed:  July 21, 2010

—————————

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

—————————

SHEPHERD, Circuit Judge.

Jerry Simons pled guilty to failing to register as required by the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901-16991, in violation of 18 U.S.C. § 2250(a).  The district court sentenced Simons to 24 months imprisonment and 20 years of supervised release.  In addition to the standard conditions of supervised release, the court imposed 18 special conditions.  Simons appeals four of those special conditions.  Because the district court plainly erred in imposing one of the special conditions, we affirm in part, reverse in part, and remand for further proceedings.

I.

On December 4, 2008, a criminal complaint was filed against Simons, charging him with failure to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a). The following day, Simons was arrested by United States Marshals in Omaha, Nebraska. A grand jury returned an indictment against Simons on December 17, charging that, having previously been convicted in Kansas of an offense that required him to register as a sex offender, he traveled in interstate commerce to Nebraska and failed to register there. On January 29, 2009, Simons pled guilty pursuant to a plea agreement.

The Presentence Investigation Report (PSR) identified two prior convictions that are relevant here: (1) a 2003 Kansas conviction for attempted indecent liberties with a child, for which Simons received 24 months probation,[1] and (2) a 2005 Oklahoma conviction for first degree rape by force and fear, for which Simons received a 30-year suspended sentence. As a result of his 2003 Kansas conviction, Simons was required to register as a sex offender under SORNA; Simons had last registered in Kansas in 2007. Simons had a base offense level of 16, which the district court reduced to 13 based on his acceptance of responsibility pursuant to United States Sentencing Commission, Guidelines Manual, §3E1.1(b) (Nov. 2009). Given Simons's 4 criminal history points, his advisory Guidelines sentencing range was 24-30 months imprisonment. Pursuant to the plea agreement, both parties asked the district court to sentence Simons at the low end of the Guidelines range. The plea agreement was silent as to any conditions of supervised release to be imposed by the court.

_____

[1]In February 2005, Simons's Kansas probation was revoked for the following violations: (1) new convictions in Missouri and Oklahoma; (2) failure to attend treatment; (3) leaving the jurisdiction without permission; (4) failure to make payments; and (5) failure to complete an evaluation. Simons served 14 months in prison for the violations. (See PSR ¶ 29.)

The district court followed the parties' recommendations and sentenced Simons to 24 months imprisonment. The court also placed Simons on supervised release for a term of 20 years. In addition to the standard conditions of supervised release, the district court imposed 18 special conditions of release recommended by the probation office, of which 4 are relevant here:

3. Paragraph # 7 of the Standard Conditions of supervision is modified, i.e., instead of merely refraining from excessive use of alcohol, the defendant shall not purchase or possess, use, distribute, or administer any alcohol, just the same as any other narcotic or controlled substance. . . .

5. The defendant shall have no contact, nor reside with children under the age of 18, including his/her own children, unless approved in advance by the U.S. Probation Officer in consultation with the treatment providers. The defendant must report all incidental contact with children to the U.S. Probation Officer and the treatment provider. Should the defendant have incidental contact with a child, the defendant is required to immediately remove him/herself from the situation and notify his/her U.S. Probation Officer within 24 hours of this contact.

6. The defendant shall not access or come within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance by the U.S. Probation Officer. . . .

13. The defendant shall neither possess nor have under his/her control any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material. This includes, but is not limited to, any material obtained through access to any computer, including a computer for employment purposes, or any other material linked to computer access or use.

(Appellant's Add. 4-5.) The district court did not explain why it imposed any of the special conditions, noting only that 20 years of supervised release was "the best thing that we can do to help [Simons] and to keep him in line." (Sentencing Hr'g Tr. 8.) Because Simons's attorney had not discussed the probation office's sentencing

-3-

recommendations with him, Simons first learned of these special conditions at his sentencing hearing. Simons objected to the special conditions generally, but did not note any specific condition to which he objected or present any argument to support his objection. The district court denied the objection, and this appeal followed.

## II.

Simons appeals the imposition of the four special conditions of his supervised release detailed above. We generally review the imposition of special conditions for an abuse of discretion. See United States v. Carlson, 406 F.3d 529, 531 (8th Cir. 2005); United States v. Boston, 494 F.3d 660, 667 (8th Cir. 2007). However, when, as here, a defendant fails to timely and specifically object to such conditions at the sentencing hearing, we review only for plain error. See United States v. Stults, 575 F.3d 834, 854 (8th Cir. 2009), cert. denied, 130 S. Ct. 1039 (2010); Carlson, 406 F.3d at 531. In their briefing to this court, both parties argued that we should review for abuse of discretion. For the first time at oral argument, however, the government argued that Simons's objection at the sentencing hearing was insufficient to preserve the issue for appeal, therefore we should review only for plain error. Having reviewed the transcript of the sentencing hearing, it appears that Simons's attorney presented only a general objection to the special conditions imposed by the court, noting neither the basis for his objection nor the specific conditions to which he was objecting. (See Sentencing Hr'g Tr. 14 ("Judge, my client has got some -- some concerns, and probably the best thing to do would be just me object to the -- to the special conditions and then I talk to him and at least there's a record there in case he needs to appeal them.").) Thus, we must review only for plain error.[2] "Plain error occurs if the

---

[2]While we agree with the government's belated argument that we should review only for plain error, we note that the government's failure to raise this argument in its brief or its letter to this Court under Federal Rule of Appellate Procedure 28(j) has hindered Simons's ability to adequately respond and, in turn, our ability to decide the issue after hearing reasoned argument from both parties.

district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights." United States v. Crose, 284 F.3d 911, 912 (8th Cir. 2002) (per curiam). The error must also "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

Although a district court "is afforded wide discretion when imposing terms of supervised release," United States v. Crume, 422 F.3d 728, 732 (8th Cir. 2005), 18 U.S.C. § 3583(d) limits that discretion, providing that a court may impose special conditions only if three requirements are met:

> First, the special conditions must be "reasonably related" to five matters: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs. 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D); United States v. Fields, 324 F.3d 1025, 1026-27 (8th Cir. 2003). Second, the conditions must "involve[] no greater deprivation of liberty than is reasonably necessary" to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs. 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(B), (a)(2)(C), (a)(2)(D). Finally, the conditions must be consistent with any pertinent policy statements issued by the sentencing commission. 18 U.S.C. § 3583(d)(3).

Crume, 422 F.3d at 733. This "inquiry must take place on an individualized basis." United States v. Bender, 566 F.3d 748, 752 (8th Cir. 2009) (quotation omitted). Applying these standards, we consider each of Simons's objections in turn.

A.

It is a standard condition of supervised release that the defendant "refrain from excessive use of alcohol." USSG §5D1.3(c)(7). Special condition 3 modifies that standard condition, providing that Simons "shall not purchase or possess, use, distribute, or administer any alcohol." Simons argues that this condition is not reasonably related to him, his offense, deterrence, or protection of the public, as required by 18 U.S.C. § 3583(d)(1). He argues that there is no evidence that he is an alcohol abuser or that alcohol contributed in any way to his present conviction. The government counters that Simons's self-reported manic-depressive disorder,[3] combined with his dishonesty about his alcohol use, was a sufficient basis for the district court to impose a complete ban on alcohol.

The evidence before the district court at the sentencing hearing was that Simons consumed alcohol one to three times per month, with his last reported use in December 2008. Simons also reported that he first used marijuana at the age of 12, and that he used it a few times until June 2003. Simons reported that he was diagnosed with manic-depressive disorder as a child and that he was prescribed and took medication for this condition while he was incarcerated in 2007. However, he could not provide the names of the medications he took nor the name of the institution where he was diagnosed. Additionally, the district court was aware that an application to revoke Simons's suspended 30-year Oklahoma sentence had been filed for his "failure to report to the probation office, failure to provide an accurate address, failure

---

[3]Manic-depressive disorder, also called bipolar disorder, is a mood disorder "characterized by episodes of a very high, often irritable, expansive mood that can be accompanied with things like impulsive behavior, disturbed sleep, decreased need for sleep, [and] rapid speech," combined with "separate depressive episodes which are low, depressed, sad moods that also have sleep/appetite disturbances." Sigala v. Quarterman, 338 F. App'x 388, 392 (5th Cir. 2009) (unpublished per curiam); see also Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 382-401 (4th ed. text revision 2000).

to pay fines and costs, and failure to successfully complete sex offender counseling, as well as the results of a polygraph examination showing that he was being deceptive concerning the use of alcohol and having contact with minor children." (PSR ¶ 30.)

Our prior reviews of special conditions imposing complete bans on alcohol have yielded mixed results. In general, we have upheld such bans for defendants with substance-abuse problems. See United States v. Behler, 187 F.3d 772, 778-79 (8th Cir. 1999) (upholding ban on alcohol for a drug-trafficking defendant with a significant history of substance abuse because alcohol use was inconsistent with the defendant's rehabilitation process and because "the evidence . . . indicated that any use of alcohol would limit [his] ability to maintain a drug-free lifestyle"); United States v. Cooper, 171 F.3d 582, 584, 586-87 (8th Cir. 1999) (upholding ban on alcohol for defendant, an over-the-road truck driver convicted of transporting explosive materials, because "there [was] some evidence that [the defendant] abused his wife and children, that he and his wife consumed large quantities of alcohol on weekends when he was employed as a truck driver, and that the couple argued more when [he] had been drinking" and because being a truck driver was "particularly incompatible with alcohol consumption"). But see United States v. Bass, 121 F.3d 1218, 1219, 1223-25 (8th Cir. 1997) (reversing alcohol ban for defendant convicted of conspiracy and possession of crack cocaine who admitted to smoking marijuana approximately twice per week). In cases where the defendant's history or crime of conviction did not support a complete ban on alcohol, we have reversed. See, e.g., United States v. Prendergast, 979 F.2d 1289, 1292-93 (8th Cir. 1992) (reversing alcohol ban for defendant convicted of fraud because there was "no evidence indicating that [he] suffers from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he was sentenced").

Given this precedent, we question whether Simons's self-reported manic-depressive disorder, coupled with an application to revoke his suspended sentence in Oklahoma due, at least in part, to dishonesty about his alcohol use, is sufficient to

justify a 20-year ban on using or possessing alcohol. However, even assuming the district court erred in imposing this special condition, we do not believe that it rises to the level of plain error. See United States v. Bongiorno, 139 F.3d 640, 640-41 (8th Cir. 1998) (per curiam) (declining to review, under plain error, a special condition of supervised release forbidding the use or possession of alcohol); United States v. McKissic, 428 F.3d 719, 720-24 (7th Cir. 2005) (holding that a district court did not plainly err in imposing a complete ban on alcohol possession for a defendant convicted of armed bank robbery). As such, we will not disturb it on appeal.

B.

Special condition 5 prohibits Simons from having any contact with children under the age of 18, including his own children, unless the contact is approved in advance by his probation officer. It also requires Simons to report any incidental contact he has with children. Simons argues that prohibitions on contact with children are appropriate only for defendants convicted of serious crimes, such as possession of child pornography, and not for what he characterizes as relatively minor offenses, such as failure to register as a sex offender. Thus, he argues that the condition involves a greater deprivation of liberty than is reasonably necessary, in violation of 18 U.S.C. § 3583(d)(2).

Simons is correct that we have often upheld conditions like special condition 5 for defendants convicted of child pornography offenses. See, e.g., United States v. Kerr, 472 F.3d 517, 521-23 (8th Cir. 2006) (possessing and distributing child pornography); United States v. Mickelson, 433 F.3d 1050, 1051, 1056-57 (8th Cir. 2006) (receiving child pornography); United States v. Mark, 425 F.3d 505, 506-08 (8th Cir. 2005) (possessing child pornography); Crume, 422 F.3d at 730, 734 (receiving and possessing child pornography); United States v. Heidebur, 417 F.3d 1002, 1003, 1005 (8th Cir. 2005) (possessing materials involving the sexual exploitation of a minor). But Simons is incorrect in inferring that possession of child

pornography is the only type of offense for which a prohibition on contact with children is appropriate. For example, in <u>United States v. Levering</u>, 441 F.3d 566, 569-70 (8th Cir. 2006), we upheld a prohibition on contact with female children under the age of 18 unless the defendant had prior approval of the probation office. There, the defendant had pled guilty to knowingly using force to engage in a sexual act with his 13-year-old cousin. <u>Id.</u> at 568. In upholding the special condition, we noted that "we have, on several occasions, approved virtually identical supervised release conditions for defendants guilty of less egregious conduct[.]" <u>Id.</u> at 569 (quotation omitted).

In many of our cases affirming no-contact conditions, we have cited a defendant's history of sexual abuse of minors as a factor in our decisions. <u>See, e.g.</u>, <u>Mark</u>, 425 F.3d at 508 (finding the district court did not abuse its discretion by imposing condition limiting contact with minors without permission, where defendant had a history of violating conditions of release and the record reflected some sexual exploration with a minor); <u>Crume</u>, 422 F.3d at 734 (finding no abuse of discretion where district court imposed a no-contact condition because the child with whom the defendant desired contact was conceived as a result of his impregnating a fourteen-year-old girl). Furthermore, § 3583(d) requires us to examine a defendant's history and personal characteristics. <u>See</u> 18 U.S.C. § 3583(d)(1) (<u>citing</u> 18 U.S.C. § 3553(a)(1)). Here, Simons has two convictions involving minor victims: (1) his 2003 Kansas conviction for attempted indecent liberties with a child, and (2) his 2005 Oklahoma conviction for first degree rape by force and fear. It appears that the victim of Simons's Oklahoma rape was his 15-year-old sister-in-law. We conclude that Simons's criminal record adequately supports the district court's no-contact condition, protecting the public from his future crimes. Moreover, we note that the condition is not a complete ban, as Simons can still have contact with minors, including his own children, if he obtains permission from his probation officer. Thus, because "requiring prior approval before [Simons,] a convicted sex offender[,] has contact with minors is a reasonable means of ensuring that such contact remains appropriate[,]"

Mickelson, 433 F.3d at 1057, we hold that special condition 5 is not unreasonably restrictive, and the district court did not plainly err in imposing it.

C.

Special condition 6 prohibits Simons from coming within 500 feet of schools, parks, playgrounds, or other places used primarily by children under the age of 18, unless he secures prior approval from his probation officer. Simons argues that this condition is unnecessarily restrictive, in violation of 18 U.S.C. § 3583(d)(1), as it bears no relationship to his offense or criminal history.

We have previously upheld conditions prohibiting a defendant from visiting places where children congregate. See Crume, 422 F.3d at 730, 733-34 (upholding special condition prohibiting a child-pornography defendant from visiting "places where minor children under the age of 18 congregate" without permission of his probation officer); United States v. Ristine, 335 F.3d 692, 693, 696-97 (8th Cir. 2003) (same). But see Bender, 566 F.3d at 753-54 (reversing, as a greater deprivation of liberty than was reasonably necessary, a condition that prohibited a defendant from frequenting places minors are known to frequent without permission, and then only in the presence and supervision of a responsible adult). As Simons points out, special condition 6 goes beyond Crume and Ristine in that it prohibits him not just from going to places where children congregate, but from even coming within 500 feet of such places. However, in Stults, we addressed an identical condition that prohibited a defendant from coming "within 500 feet of schools, school yards, parks, arcades, playgrounds, amusement parks, or other places used primarily by children under the age of 18 unless approved in advance and in writing by the probation officer." 575 F.3d at 851. Given the defendant's history of sexually abusing minors, and the fact that he could get permission from his probation officer to come within 500 feet of places used primarily by children, we upheld the condition. Id. at 853.

We find the reasoning in Stults persuasive. First, given Simons's history of committing crimes against children, a ban on coming near places where children congregate is consistent with the district court's duty to protect the public from Simons's future crimes. Second, as in Stults, Crume, and Ristine, special condition 6 is not a *complete* ban. Simons may still come within 500 feet of places used primarily by children, as long as he has the prior approval of his probation officer. Such "[c]onditions requiring the prior approval of a probation officer are consistently upheld." Stults, 575 F.3d at 853 (quotation omitted). Finally, although a prohibition on coming within 500 feet of a place where children congregate is stricter than a prohibition on merely being in such places, this does not change our analysis. Although Simons claims that this will "restrict where [he] lives, works, drives, shops, and eats," those concerns are alleviated by the fact that his probation officer can approve, in advance, certain exceptions to the 500-foot prohibition. Thus, we hold that the district court did not plainly err in imposing special condition 6.

## D.

Special condition 13 prohibits Simons from possessing or having under his control "any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material." (Appellant's Add. 5.) Simons argues that the condition is unconstitutionally vague and overbroad, infringing on what he alleges to be his First Amendment right to view nonobscene material that contains nudity. See Erznoznik v. City of Jacksonville, 422 U.S. 205, 208-12 (1975); see also United States v. Loy, 237 F.3d 251, 261-62, 266-67 (3d Cir. 2001) (holding that a prohibition on possessing pornography violated the defendant's First Amendment rights because it "might apply to a wide swath of work ranging from serious art to ubiquitous advertising" and "to any art form that employs nudity"); cf. Miller v. California, 413 U.S. 15, 23 (1973) (noting that "obscene material is unprotected by the First Amendment"). Simons also argues that the condition grants too much discretion to the probation officer in deciding what constitutes "sexual

activity" and "sexually arousing material," and is not sufficiently related to his crime, his criminal history, or the sentencing purposes of 18 U.S.C. § 3583(d)(1).

Prohibitions on the possession of pornographic materials are not unusual special conditions, and they have often withstood First Amendment challenges. See, e.g., Stults, 575 F.3d at 854-55 (upholding, on plain error review, a child-pornography defendant's ban on "accessing, viewing, or possessing any pornographic sexually oriented or sexually stimulating materials") (quotation and alteration omitted); Boston, 494 F.3d at 667-68 (holding that district court did not abuse its discretion in imposing a ban on "view[ing] or possess[ing] any form of pornography, sexually stimulating or sexually oriented material"); Ristine, 335 F.3d at 694-95 (upholding, on plain error review, a ban on possessing pornographic materials for a defendant convicted of receiving child pornography). The portion of special condition 13 that prohibits Simons from possessing or viewing material that depicts or alludes to sexual activity or depicts sexually arousing material is very similar to the conditions we upheld in Stults and Boston. As a whole, however, special condition 13 goes beyond those cases, prohibiting Simons from possessing any material that depicts nudity. By its terms, it would prohibit Simons from viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all of which depict nudity.

To our knowledge, the Seventh Circuit is the only federal court to have addressed a special condition similar to the one at issue here. In United States v. Holm, 326 F.3d 872 (7th Cir. 2003), the defendant had pled guilty to possession of child pornography. Id. at 874. In addition to challenging the constitutionality of his conviction, the defendant challenged a number of his conditions of supervised release, one of which prohibited "possession of material containing nudity." Id. His discussion of the supervised release issues on appeal, however, was "brief to the point of brushing up against full-blown waiver," as the "entire discussion of the subject [was] contained within slightly more than a single page" of his brief, and included "no

citations to additional material in the record, beyond the court's judgment itself, that might help to illuminate the basic contours of his claims." Id. at 877. Nevertheless, the court "look[ed] briefly at [the defendant's] claims" and affirmed the special condition prohibiting possession of material containing nudity without discussion. Id. Without some guidance from the Seventh Circuit about the reasoning for its decision or information about why the district court imposed the special condition on that particular defendant, Holm does little to assist our analysis here.

The government attempts to save special condition 13 by analogizing it to cases like Stults, Boston, and Ristine, which upheld prohibitions on possessing pornography, essentially arguing that special condition 13 was intended to prohibit Simons from viewing or possessing pornography. But special condition 13 goes well beyond the conditions upheld in those cases. Whatever the definition of "pornography,"[4] it includes more than mere nudity. See Jenkins v. Georgia, 418 U.S. 153, 161 (1974) ("[N]udity alone is not enough to make material legally obscene . . . ."); United States v. Kemmerling, 285 F.3d 644, 645-46 (8th Cir. 2002) ("We have held that more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the [child pornography statute]."). Indeed, if the district court was attempting to prohibit Simons's possession of pornography, a ban on materials that contain nudity may have been superfluous; a ban on "material that depicts or alludes to sexual activity or depicts sexually arousing material" would also ban pornography, at least under some definitions of the word. See Black's Law

---

[4]Although the definition of "obscenity" has been thoroughly examined by the Supreme Court, culminating in the now-familiar Miller test, see Miller v. California, 413 U.S. 15 (1973), "[d]efining pornography is notoriously difficult[,]" Cass R. Sunstein, Pornography and the First Amendment, 1986 Duke L.J. 589, 591. In Miller, the Court used only a footnoted dictionary definition of the word, see 413 U.S. at 18 n.2, and the Court has not subsequently addressed the term outside the context of pornography involving or depicting children. To be sure, not all material that qualifies as pornography would also meet the Miller test of obscenity. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240 (2002).

Dictionary 1279 (9th ed. 2009) (defining pornography as "[m]aterial (such as writings, photographs, or movies) depicting sexual activity or erotic behavior in a way that is designed to arouse sexual excitement"); Miller, 413 U.S. at 18 n.2 (defining pornography as "a depiction (as in writing or painting) of licentiousness or lewdness: a portrayal of erotic behavior designed to cause sexual excitement." (quoting Webster's Third New International Dictionary (Unabridged 1969))). Thus, our prior decisions upholding prohibitions on possessing pornography are insufficient to save special condition 13.

The government also argues that the probation office and, ultimately, the district court can act to limit the reach of special condition 13 to obscene materials or pornography, thereby bringing it within the reach of Stults, Boston, and Ristine. In essence, the government argues that if special condition 13 is administered in a way that infringes on Simons's First Amendment rights, the district court can step in and correct the problem. The plain language of special condition 13, however, includes no mechanism for prior approval by the probation office, unlike special conditions 5 and 6. And having the district court determine, on a case-by-case, if material that Simons possesses violates special condition 13 is an inefficient way of determining the lawful scope of the condition. While it is true that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language[,]" Grayned v. City of Rockford, 408 U.S. 104, 110 (1972), and district courts must be granted some leeway in fashioning conditions of supervised release that are consistent with 18 U.S.C. § 3583(d), if the district court wished to limit Simons's access to pornography, we see no reason why special condition 13 could not have been written to state exactly that. As it is currently written, however, special condition 13 involves a "greater deprivation of liberty than is reasonably necessary[,]" 18 U.S.C. § 3583(d)(2), which affected Simons's substantial First Amendment rights. Thus, we hold that the district court plainly erred in imposing special condition 13, and we vacate that condition and remand for additional findings of fact and resentencing.

-14-

III.

For the reasons stated above, we affirm special conditions 3, 5, and 6, vacate special condition 13, and remand to the district court for further proceedings consistent with this opinion.

_____