Filed 1/25/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CARLOS C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CARLOS C.,<br><br>      Defendant and Appellant. | A150737<br><br>(Napa County<br>Super. Ct. No. JV17582) |

　　　　Carlos C. (hereafter "Charley"[1]) appeals a dispositional order, entered after the juvenile court sustained allegations that he committed misdemeanor sexual battery (Pen. Code, § 243.4, subd. (e)[2]) when he touched the breast of a female high school classmate.  Charley argues the court's finding that he committed the offense is unsupported by substantial evidence, because there is insufficient evidence he had the requisite intent when he touched her.  He also challenges two conditions of probation as unconstitutionally overbroad:  one prohibiting him from using, owning or possessing "any material which [*sic*] depicts partial or complete nudity," a question that presents an

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Background Part II and Discussion Parts I and III.

[1] The parties referred to Carlos C. by his nickname "Charley" throughout the proceedings.  To avoid confusion, we will also refer to him by this nickname.

[2] Unless otherwise noted, all further statutory references are to the Penal Code.

issue of first impression, and another that permits warrantless searches of his electronic devices.

In the unpublished portions of this opinion, we conclude there is substantial evidence Charley committed sexual battery, and that his challenge to the electronics search condition of probation has been forfeited. In the published portion, however, we agree with Charley and hold that the condition of probation forbidding him from using, owning or possessing depictions of nudity is unconstitutionally overbroad and therefore we will order the condition stricken. As so modified, the court's disposition order will be affirmed.

## BACKGROUND

### Part I.

These Welfare and Institutions Code section 602 wardship proceedings were originally commenced in October 2013, when Charley, then 14 years old, was charged with two felony counts, including participating in a criminal street gang (§ 186.22, subd. (a)). The original petition was precipitated by an incident that took place at Charley's middle school when he was waiting in an office for his mother to pick him up after he'd been suspended that day for other behavior; while waiting, he threatened the female school administrator who was supervising him that "you're going to get shot," and made unnerving statements relating to his involvement with the Norteño street gang. Subsequently, after getting arrested for violating the terms and conditions of his initial home detention by bullying a fellow student, the original charges were dismissed, and he admitted to a lesser included offense of having made misdemeanor criminal threats toward the middle school employee. (§ 422.) He was then adjudged a ward of the court and placed on probation.

Approximately seven months later, in August 2015, Charley, then 16 years old, was arrested again after police officers encountered him with a documented Norteño gang member who was on adult probation. Police discovered Charley in possession of marijuana and, when they searched his cell phone, found photos of him wearing gang-related clothing, communications with the gang member and messages and videos

2

relating to marijuana.  The incident resulted in Charley admitting to several probation violations (possessing marijuana, possessing gang-related items, and associating with a criminal street gang member), and thereafter he was continued as a ward of the court and reinstated on probation.

Several months later, in March 2016, Charley, still 16, was arrested a third time, again for violating probation.  This time, in his second probation violation petition, he was alleged to have twice tested positive for marijuana, repeatedly been late to school and been discharged from his court-ordered counseling program for missing three consecutive weekly sessions.  Charley once again admitted the violations and the juvenile court sustained the petition.  He was continued as a ward of the court and again reinstated on probation.

These wardship proceedings culminated approximately ten months later, in January 2017, when Charley (by then, age 17) was charged in a supplemental Welfare and Institutions Code section 602 petition with five misdemeanor counts and a violation of probation, stemming from an incident in his high school classroom on January 23 in which he allegedly touched a female student inappropriately, in a sexual manner.  Count three concerned the breast touching at issue in this appeal.

**Part II.**

The sole witness at the contested jurisdiction hearing was the victim, B.P., whose testimony we summarize in the light most favorable to the judgment.

B.P. testified that on the day in question, she and Charley were in class together with other students and a substitute teacher.  B.P. was acquainted with Charley and with his girlfriend.

At one point, during a break, Charley began playing with a balloon in the classroom, and rubbed it playfully on her head.  He was acting hyper that day, and his actions didn't upset or scare her, "I knew he was just playing."  A few minutes later, he hugged her.  That didn't make her feel uncomfortable either, even though she knew he had a girlfriend.

Later on, though, B.P. was seated beside Charley and another male student, E., just talking to them in a normal fashion, when they began talking about "pimping [her] out and stuff" and calling her a "ho." They said things like, "we're going to pimp you out, you'll make money for me and I'll travel and you won't have to worry about getting money." She told them to stop talking to her like that, and Charley continued for a little bit but then "said he would stop because he didn't want to get in trouble." E., though, kept it up. E. "kept saying he was going to slap me and calling me a bitch." Both boys made her feel uncomfortable, and E. scared her.

About a half hour later, Charley was seated beside B.P. at a desk when he reached over and touched her inner upper thigh and then touched her breast with the palm of his hand. When he touched her thigh, she pushed his hand away, and when he then touched her breast she had to push his hand away again and told him to stop. She didn't think Charley wanted to be her boyfriend, and he didn't say anything about having sex with her, but it made her feel weird and uncomfortable "[b]ecause I don't like being touched like that." It also felt weird because she knew his girlfriend would get mad.

The next day, B.P. reported E. to a teacher's aide but did not mention Charley. She asked to be removed from the classroom. She wasn't afraid of Charley and didn't think he would do it again. Nevertheless, for reasons she was not asked to explain, she later told a campus police officer about what Charley had done.

Admitted into evidence was videotape footage of the incident from a surveillance camera in the classroom. It depicts Charley seated beside B.P. in the classroom, both apparently engaged in schoolwork at their desks. Charley can be seen reaching out with his hand under a desk toward B.P.'s groin area while she is working. Without looking up from her work, B.P. grabs his hand and pushes it away from her. Within seconds after that, Charley can be seen pulling his chair closer to B.P. and then reaching his arm sideways toward her at chest height and touching her breast with his palm of his hand. B.P. can be seen pushing him away a second time as she slides her chair backwards and away from him. As she does so, Charley stretches both of his arms above his head yet continues toward B.P. with an outstretched arm, whereupon she grabs his hand and

4

deflects what appears to be an attempt to touch her yet a third time. The episode lasts approximately 10 to 15 seconds.

The video also depicts the balloon-rubbing and "hug" moments earlier in the day. In the video clip of the latter, Charley can be seen approaching B.P., who was seated, and spontaneously grabbing her upper torso in bear-hug like fashion. Although B.P. testified she didn't push Charley away when he hugged her but, rather, hugged him back, the juvenile court wasn't required to accept that testimony and could conclude from the video footage alone that she appeared to be resisting his advance.

## Part III.

At the conclusion of the jurisdictional hearing, after several counts had been dismissed, the juvenile court found that Charley had committed simple battery in connection with the thigh touching of his classmate (a lesser included offense of count two), misdemeanor sexual battery in connection with the breast touching (count three) and a violation of probation (count six).

Thereafter, an uncontested disposition hearing took place on February 27, 2017. The juvenile court continued Charley as a ward of the court, placed him under the supervision of the probation department, initially to be detained at juvenile hall at the department's discretion for a period of 45 days (with credit for 34 days) and thereafter placed back in his mother's home, subject to specified conditions of probation, two of which we address below.

This timely appeal followed.

## DISCUSSION

## I.

### *The Juvenile Court's Finding Charley Committed Sexual Battery Is Supported by Substantial Evidence.*

#### A. Standard of Review

In reviewing the sufficiency of evidence of criminal acts in juvenile proceedings, we apply the same standard of review as in adult criminal appeals. (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994.) " 'Under this standard, the critical inquiry is "whether, after

5

reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] An appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Id.* at pp. 994–995.) We must " ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Id.* at p. 995.) And, " ' "[i]f the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.] [¶] Before the judgment of the trial court can be set aside for insufficiency of the evidence . . ., it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." ' " (*Id.* at p. 995.)

## B. There Is Substantial Evidence Charley Intended to Commit Sexual Abuse.

Penal Code section 243.4 provides in relevant part that "[a]ny person who touches an intimate part of another person, if the touching is against the will of the person touched, *and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse*, is guilty of misdemeanor sexual battery." (§ 243.4, subd. (e)(1), italics added.) Here, Charley does not dispute that, in groping B.P.'s breast, he touched an intimate part of B.P. against her will.[3] He contends, however, there is insufficient evidence that he did so "for the specific purpose of . . . sexual abuse."[4]

---

[3] "Touches" is defined as "physical contact with the skin of another person whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." (§ 243.4, subd. (e)(2).) "Intimate part" is defined as "the sexual organ, anus, groin, or buttocks of any person, and the breast of a female." (§ 243.4, subd. (g)(1).)

[4] Below, both the parties and the court focused only on the "sexual abuse" aspect of the intent requirement and did not address whether Charley's actions could be said to

The parties agree on what constitutes "sexual abuse" within the meaning of the statute, announced by the only reported case to have construed it. It encompasses a touching for the purpose of "insulting, humiliating, or intimidating" someone, even if the touching doesn't result in actual physical injury. (*In re Shannon T.* (2006) 144 Cal.App.4th 618, 622.) Judged by that standard, we conclude there is substantial evidence Charley had the required intent.

In *Shannon T.*, our colleagues in the Third District upheld a minor's conviction for sexual battery in circumstances that Charley acknowledges are at least "superficially" similar. In that case, the minor, a 14-year-old boy, approached a 16-year-old girl at school who was talking on her cell phone and said, "Get off the phone. You're my 'ho.' " (*Shannon T.*, *supra*, 144 Cal.App.4th at p. 620.) The girl replied "whatever" and began walking away. (*Ibid*.) The minor then pursued her and said, "Don't talk to me like that." (*Ibid*.) He then slapped her face, grabbed her arm and pinched her breast. (*Ibid*.) The pinch caused her to cry and left a bruise. (*Ibid*.) She was scared that he would do something else, and she reported the incident to school security who described her as "hysterical." (*Id*. at p. 623.)

*Shannon T.* held in these circumstances there was substantial evidence the minor touched his victim for the purpose of sexual abuse. (See *Shannon T.*, *supra*, 144 Cal.App.4th at pp. 621–623.) The court reasoned the minor's purpose "can be inferred from the act itself together with its surrounding circumstances." (*Id*. at p. 622.) Despite evidence that the minor and his victim had been friends, and had engaged in "playful hitting" and "hugging" on other occasions, it said the evidence belied the minor's assertion he was only "playing around" when he touched her breast. (*Id*. at pp. 622–623.) Rather, the evidence supported a conclusion that he pinched her breast for the specific purposes of insulting, humiliating *and* also physically hurting her. (*Id*. at p. 623.) As the

---

have been motivated, alternatively, by "sexual arousal" or "sexual gratification." On appeal, Charley contends there was no evidence he touched B.P. for either purpose and the People do not contend otherwise. Therefore we focus solely on the issue of Charley's intent to commit "sexual abuse."

court explained, "The minor was not a prepubescent boy who, acting in a fit of pique, grabbed the nearest available body part of a physically immature girl who refused to acquiesce in childish demands. He was a 14-year-old boy who insulted the 16-year-old victim and claimed dominance over her by calling her his 'ho' and by demanding that she end her cell phone call. When the victim did not obey his command, he slapped her on the face and purposely squeezed her breast near her nipple, hard enough to cause bruising. Like the slapping of the victim's face, it appears that the pinching of such a sensitive area of a female's body, her breast, was calculated to cause her pain in order to insult and humiliate her for her refusal to submit to what the minor perceived to be his dominance over her, and to intimidate her into complying with his demands." (*Ibid.*)

As in *Shannon T.*, Charley's purpose "can be inferred from the act itself together with its surrounding circumstances." (*Shannon T.*, *supra*, 144 Cal.App.4th at p. 622.) Like the minor in that case, Charley was "not a prepubescent boy who, acting in a fit of pique, grabbed the nearest available body part of a physically immature girl who refused to acquiesce in childish demands." (*Id.* at p. 623.) He was 17 years old, had a girlfriend, and, after a morning of engaging in increasingly physical contact with a teenage girl in his classroom (from rubbing a balloon on her head to hugging), decided to pile on with another classmate and unleash offensive, sexually explicit insults toward her in a show of male dominance (offering to "pimp out" B.P. and calling her a "ho"). When she told him to stop, he did so not out of empathy, regret or remorse, but because he realized he might get in trouble if he persisted. Then, a short time later, he changed tactics and groped her not once but twice while seated beside her during class. The second time, he touched her breast after B.P. had already pushed his hand away from her groin. The videotape alone is substantial evidence of an intent to insult and humiliate her. It clearly depicts Charley reaching multiple times toward intimate parts of B.P.s body, the second time after she pushed his hand away. His persistence in touching her against her will in this manner, after having already sexualized the setting through his earlier taunts, supports an inference he did so for the purpose of insulting, humiliating or intimidating B.P. And by

8

all accounts it worked to some degree: although B.P. wasn't afraid of him, she testified, "I don't like being touched like that" and it made her feel weird and uncomfortable.

In urging us to reverse, Charley principally contends that the facts of *Shannon T.* are distinguishable, and to some extent (as with most sufficiency of the evidence issues) that is true. But Charley has not persuaded us that the evidence here is insufficient to support the juvenile court's findings. And while we agree with Charley that in some ways, the facts and circumstances of *Shannon T.* are more aggravated, in other ways the facts and circumstances of this case are worse than those in *Shannon T.* For example, there was no videotaped evidence in *Shannon T.*, as there is here. Nor did the minor touch the victim repeatedly in intimate areas of her body, as Charley did here. And Charley, at 17, was three years older than the minor in *Shannon T.* His defense of mere playful touching rings even more hollow. The admonition of our Third District colleagues bears repeating: "The lesson learned is that, in a civilized society, mature people ordinarily do not touch the intimate parts of other people without consent, and that a person who does so acts at his or her peril of being found to have committed sexual battery." (*Shannon T.*, *supra*, 144 Cal.App.4th at p. 623).

In short, we agree with Charley this might have been an "impulsive juvenile act." But there was substantial evidence supporting the finding that it was also sexual battery.

## II.

### *The Probation Condition Banning Charley from Owning, Using or Possessing Depictions of Nudity Is Unconstitutionally Overbroad (Condition Number 20).*

Charley contends the juvenile court erred by imposing a condition of probation that is unconstitutionally overbroad in violation of his First Amendment rights and asks us to strike it, and here we agree.

The challenged provision, condition number 20, states that Charley "shall not own, use, or possess any form of sexually arousing materials which include computer based movies, videos, magazines, books, games, sexual aids or devices, *or any material which depicts partial or complete nudity* or sexually explicit language, nor frequent any establishment where such items are the primary commodity for sale." (Italics added.)

9

Charley challenges only the italicized portion of condition number 20 referring to material depicting "partial or complete nudity." He does not challenge the prohibition against owning, using or possessing "sexually arousing materials" or materials with "sexually explicit language," acknowledging (commendably) that conditions with similar language have been upheld against constitutional overbreadth challenge by other courts. (See, e.g., *People v. Turner* (2007) 155 Cal.App.4th 1432, 1434–1437 [possession of "any sexually stimulating/oriented material"]; *United States v. Bee* (9th Cir. 1998) 162 F.3d 1232, 1234–1235 [possession of "any sexually stimulating or sexually oriented material"].)[5]

The trial courts have greater discretion in formulating the terms of probation for minors than for adults, because minors are " 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) Nevertheless, even where minors are concerned, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890; accord, *Victor L.*, at p. 910.)

Although no California court has addressed the issue, the three federal circuits to have done so have, almost uniformly, struck down as unconstitutionally overbroad conditions prohibiting adult offenders from possessing depictions of nudity.[6] (See

---

[5] This issue is cognizable on appeal despite the fact that Charley did not object below to the nudity condition on constitutional overbreadth grounds. (He did object to it, but without specifying the grounds.) That is because it presents a facial constitutional challenge, i.e., a pure question of law we can decide without reference to the particular record developed below that implicates a potential error we can easily remedy. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 885–889.)

[6] The only outlier of which we are aware is the Seventh Circuit's decision in *United States v. Holm* (7th Cir. 2003) 326 F.3d 872, which upheld a condition prohibiting the defendant from possessing "material containing nudity," but without analysis. (See *id*. at p. 877.) We agree with the Eighth Circuit that *Holm* provides no helpful guidance. (See *United States v. Simons* (8th Cir. 2010) 614 F.3d 475, 484 (*Simons*).)

10

*Simons*, *supra*, 614 F.3d at pp. 483–485; see also *United States v. Biggins* (11th Cir. Oct. 28, 2016, No. 14-12545) 664 Fed.Appx. 789, 792–793 [per curiam]; *United States v. Siegel* (7th Cir. 2014) 753 F.3d 705, 712–713 [Posner, J.]; *United States v. Kelly* (8th Cir. 2010) 625 F.3d 516, 521.)  The overbreadth of this type of condition is both sweeping and obvious:  "By its terms, it would prohibit [defendant] from viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all of which depict nudity." (*Simons*, at p. 483.)  Condition number 20 is not limited to sexually explicit depictions of nudity but literally would prohibit Charley from viewing or possessing "a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous . . . as well as shots of bathers on a beach." (*Erznoznik v. City of Jacksonville* (1975) 422 U.S. 205, 213.)  Watching the celebrated television miniseries *Roots* could spell trouble,[7] or a documentary about the Vietnam War.[8]  Even perusing family photographs (a baby's first bath, after all, being a quintessential staple of many family photo albums).

The People's principal argument is not to defend the constitutionality of this condition but, rather, to construe it narrowly.  It argues the disputed nudity language "is not overbroad when considered in the context of the condition as a whole, and given its ordinary meaning and interpreted with common sense," because it supposedly contains a limitation that the depiction be "sexually arousing" in the manner of materials found in X-rated movies or adult bookstores.  Thus, the People contend, as so construed condition number 20 does not prohibit Charley from viewing displays of nudity in mainstream

---

[7]  See Nudity in American television—Wikipedia, The Free Encyclopedia <https://en.wikipedia.org/wiki/Nudity_in_American_television> (as of Dec. 21, 2017) [noting that the miniseries "featured some partial nudity of its cast, usually fleetingly, but more so than other commercial network programming in the US in the 1970s"].

[8]  See 7 Things Parents Should Know About 'The Vietnam War' on PBS— <https://geekdad.com/2017/09/7-things-ken-burns-the-vietnam-war/> (as of Dec. 21, 2017) [alluding to "graphic footage of . . . children running down the street naked in flames"].

11

movies or television shows, or in great works of art or educational text books. We disagree. That interpretation is at odds with the plain text of what the court ordered. The People in fact have it backwards. The nudity language is not *limited by* the phrase "any form of sexually arousing material," but is a subcategory *identified as* (and therefore prohibited as) "sexually arousing material." Simply put, the court's order broadly defines the prohibited category of "any form of sexually arousing material" as including "any material which depicts partial or complete nudity." Implicit in the People's interpretation of condition number 20 is a concession, however, that the juvenile court did not intend to restrict Charley's access to all depictions of nudity. So we have little trouble concluding the condition as written must be modified.

The People also stress that Charley committed a sex offense. But sex offenses were involved in many of the federal cases too. (See *Simons*, *supra*, 614 F.3d at p. 477 [failing to register as a sex offender]; *United States v. Biggins*, *supra*, 664 Fed.Appx. at p. 790 [interstate transportation of a child for prohibited sexual activity and two child pornography offenses]; *United States v. Siegel*, *supra*, 753 F.3d at p. 706 [child sex abuse].) The People do not explain how restricting Charley's access to all images of nudity, no matter how benign or innocuous (or, indeed, artistically or educationally enlightening), will accomplish the state's goal of rehabilitating him.

Finally, the People distinguish the federal authorities on the ground they involve adult probationers whereas the constitutional rights of Charley, a minor, are more circumscribed. And that is true. But there are, of course, limits. "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights . . . ." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) Restricting a minor's access to such a wide range of materials with potential artistic, cultural and/or educational value imposes a significant burden on the minor's constitutional rights with little, if any, discernible impact on the minor's reformation and rehabilitation, even a minor adjudged to have committed a sex offense. (See *Victor L.*, *supra*, 182 Cal.App.4th at p. 910.) The state's compelling interest in reforming Charley is aptly served, and reasonably so, by that

portion of condition number 20 restricting his access to "sexually arousing materials" and materials with "sexually explicit language," terms that, as said, Charley does not challenge.

A condition that goes beyond that, however, to include a total ban on depictions of nudity is, even for a juvenile sex offender, unconstitutionally overbroad. Accordingly, we will modify condition number 20 by striking the challenged nudity language, as the People concede we may do. (See, e.g., *People v. Turner*, *supra*, 155 Cal.App.4th at p. 1436 [recognizing appellate courts' power to modify probation conditions to render them constitutional]; *Sheena K.*, *supra*, 40 Cal.4th at p. 888.)

### III.

### *Charley Has Forfeited His Constitutional Overbreadth Challenge to the Electronics Search Conditions of Probation (Condition Numbers 10 and 18).*

Among the probation terms and conditions the juvenile court imposed at the February 27, 2017 disposition hearing were two pertaining to Charley's electronic devices and internet accounts.[9] Charley argues that both must be stricken because they are constitutionally overbroad or, at a minimum, must be modified "to limit the types of electronic devices and internet accounts that can be searched, and to specify that such searches must be 'reasonably likely to reveal' evidence of drug use or gang association." We decline to address this issue because it has been forfeited.

---

[9] Condition number 10 requires Charley to "submit all electronic devices under [his] control to search and seizure by any law enforcement or probation officer at any time of the day or night with or without a search warrant, arrest warrant, or reasonable suspicion. The minor shall also disclose any and all passwords, passcodes, password patterns, fingerprints, or other information required to gain access into any electronic device as requested by any law enforcement or probation officer."

Condition number 18 requires Charley to "disclose to the minor's probation officer all electronic mail accounts, all Internet accounts, and any other means of access to any computer or computer network, all passwords and access codes. The minor shall consent to the search of that electronic mail and Internet accounts, and any computer system at any time and the seizure of any information or data contained therein without a search warrant or probable cause."

13

Charley concedes no objection to these conditions was made below, yet contends the issue is reviewable as a pure facial challenge under the principles announced in *Sheena K.* We do not agree. Unlike Charley's challenge to the nudity condition, consideration of this issue would require us to examine the individual facts and circumstances of Charley's wardship proceedings and not merely "abstract and generalized legal concepts." (See *Sheena K.*, *supra*, 40 Cal.4th at p. 885.) That is because probationary monitoring of electronic devices, including social media accounts, is not unconstitutional as a matter of law; the question is whether the infringement of constitutional rights occasioned by electronics search conditions is justified by countervailing state interests on the particular facts. (Compare, e.g., *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1175–1177 [upholding probation condition requiring monitoring of gang member's electronic devices and social media accounts] with *People v. Valdivia* (2017) 16 Cal.App.5th 1130, 1134, 1141–1148 [striking electronics search condition imposed on adult who pled guilty to single count of spousal abuse as unconstitutionally overbroad, and remanding for possible narrowing]; see also *In re P.O.* (2016) 246 Cal.App.4th 288, 298 [upholding electronics search condition justified by need to supervise juvenile's drug use but narrowing it on appeal].) What is constitutionally impermissible in one case might be entirely appropriate in another, because the concept of narrow tailoring is not a one-size-fits-all proposition. Simply put, the more severe a minor's needs are, the broader an electronics search condition may be. (Compare, e.g., *In re J.E.* (2016) 1 Cal.App.5th 795, 798, 803–807 [rejecting constitutional overbreadth challenge to probation condition permitting warrantless search of minor's " 'electronics, including passwords, at the request of a Probation Officer or peace officer,' " because "[m]inor's circumstances and needs are numerous and fairly severe" and "[a] broad electronic search condition is appropriate for the level of supervision Minor requires"], review granted Oct. 12, 2016, S236628; *In re Q.R.* (2017) 7 Cal.App.5th 1231, 1238 [rejecting constitutional overbreadth challenge, because "[i]n the context of this case, robust access to minor's electronic devices is critical to monitor his progress on probation and to ensure that he is not continuing to engage in the sort of

14

criminal conduct that led to him being declared a ward of the court"], review granted Apr. 12, 2017, S240222 with, e.g., *In re P.O.*, *supra*, 246 Cal.App.4th at p. 298 [electronic search condition held constitutionally overbroad because "[minor's] needs are less severe," and modified on appeal to apply only to data and communications "reasonably likely to reveal whether [juvenile] is boasting about drug use or otherwise involved with drugs"].) But that does not mean the constitutional inquiry is facial; on the contrary, it depends on a minor's particular rehabilitative needs, i.e., the record of disposition proceedings.

Charley cites no case holding that a constitutional overbreadth challenge to an electronics search condition is a facial challenge, cognizable for the first time on appeal. On the contrary, in *In re P.O.*, *supra*, 246 Cal.App.4th 288, cited by Charley, the minor objected to an electronics search condition in the juvenile court on an unspecified ground, and on appeal our colleagues in Division One concluded the objection was *not* sufficient to preserve a constitutional overbreadth claim on appeal. (See *id*. at pp. 294, 298.) But unlike here, the record reflected the juvenile court's purpose for imposing it (monitoring the minor's drug use), and our colleagues in Division One exercised their discretion to consider the issue, concluding the provision was constitutionally overbroad *in light of that stated purpose*. (See *id*. at p. 298.)

We are unwilling to exercise our discretion to undertake this inquiry in the first instance. Here, as said, the juvenile court didn't articulate its reasons for imposing the electronics search conditions. (See also, e.g., *In re J.B.* (2015) 242 Cal.App.4th 749, 752–753 [where the court did so, after an objection and a contested motion asking to strike the condition].) And yet the record paints a worrisome picture of a troubled youth whom the juvenile court could well conclude needed strict supervision. At age 17, nearly an adult, Charley had severe needs that not only had failed to abate but were escalating. By the time of the disposition hearing, he had a substance abuse problem (with marijuana, alcohol and Xanax), dating back to age 13. He was an admitted gang member. At school, he was a chronic truant with an extensive discipline record, for things like defiance, disrespect, class disruptions and profanity. The probation

department judged him a high risk. He had violated the terms of his probation numerous times already. According to the probation report, his behavior while detained at juvenile hall was "dismal." And while detained there, he also was discovered with a disturbing stash of letters branding his victim a "snitch bitch" and implying a threat of gang retaliation against her (" 'tell my girl to wait and not believe that Bitch I pissed on she just talk all that shit snitch bitch about to get slap by the hole team thoe on mamas' ").

Against this troubling background, moreover, no record was made of what kinds of electronic devices and accounts Charley uses or how, such as might aid a narrow tailoring analysis. But what little we do know, from the police discovery on Charley's cell phone of gang-related and drug-related photographs and communications, is that Charley was prone to using electronic devices in connection with delinquent ways. So for these reasons, on this record, we will not substitute our judgment for that of the juvenile court, nor wade into the particulars of deciding whether the electronic monitoring conditions could be, or should have been, more narrowly tailored.

Compounding our reluctance to decide this question, finally, is that Charley's counsel not only failed to object to conditions 10 and 18, he affirmatively acquiesced in them. We quote the relevant portions of that colloquy:

"[DEFENSE COUNSEL:] Well, with regards to 17 and 18, *I think 18 sort of becomes redundant when you have condition 10, which there's no objection to. So I don't have an issue with it*. I don't know why we need both, but that's, I guess, academic at this point. [¶] With regard to number—

"THE COURT: I would agree it is, except the specific reference to Title XVIII.[10]

---

**10** This was a reference to condition number 17, which states that Charley "shall not provide false information about his . . . identity to any provider of an 'electronic communications service' as defined under paragraph (15) of Section 2510 of Title 18 of the United States Code when purchasing, subscribing to, or agreeing to purchase or subscribe to any service from that provider that allows the defendant to send or receive electronic communications."

16

"[DEFENSE COUNSEL: ] Oh, I'm sorry, I was talking about 18. Eighteen says basically give us the passwords, 10 says give us the passwords. I don't think it will be an issue. I just wanted to raise it.

"THE COURT: May be a little redundant, but all right." (Italics added.)

Having stated he had "no objection" to number 10, and that number 18 was "redundant" but that he had "no issue" with it, defense counsel waived and/or invited any error in their imposition. (See *People v. Allexy* (2012) 204 Cal.App.4th 1358, 1363; *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 857; see also *Stickel v. San Diego Electric Railway Co.* (1948) 32 Cal.2d 157, 166.)

Finally, Charley argues that his counsel's failure to object is excused, because the law concerning the validity of electronics search conditions of probation was unsettled at the time of the February 27, 2017 disposition hearing, and so reasonable minds could differ as to the need for an objection. Again, we disagree. It is true that the legality of an electronics search condition is currently pending Supreme Court review.[11] However, the lack of an objection will be excused where there has been a subsequent change in the law that competent counsel in the lower court cannot reasonably be expected to have anticipated. (See *People v. Pearson* (2013) 56 Cal.4th 393, 461–462; accord, *People v. Harris* (2013) 57 Cal.4th 804, 840; see also *In re Gladys R.* (1970) 1 Cal.3d 855, 861 as construed by *People v. Black* (2007) 41 Cal.4th 799, 811.) There has been no such change here. All of the authorities cited in Charley's appellate brief on the search condition issue had been published and decided, and were readily available, at the time of the February 2017 disposition hearing. An objection by no means would have been

---

[11] *In re Ricardo P.* (2015) 241 Cal.App.4th 676, 681, review granted February 17, 2016, S230923; *In re Patrick F.* (2015) 242 Cal.App.4th 104, 108, review granted February 17, 2016, S231428; *In re Alejandro R.* (2015) 243 Cal.App.4th 556, 561, review granted March 9, 2016, S233340; *In re Mark C.* (2016) 244 Cal.App.4th 520, review granted April 13, 2016, S232849; *In re A.S.* (2016) 245 Cal.App.4th 758, review granted May 25, 2016, S233932; *In re J.E.* (2016) 1 Cal.App.5th 795, review granted October 12, 2016, S145399; *In re Q.R.* (2017) 7 Cal.App.5th 1231, review granted April 12, 2017, S240222.

"wholly unsupported by substantive law then in existence." (*People v. Welch* (1993) 5 Cal.4th 228, 237.)  Nor was it true that "existing law overwhelmingly said no such objection was required." (*Id*. at p. 238.)  On the contrary, *Sheena K*. had been the settled law of this state for ten years:  namely, that not " 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court," ' " and that "generally, given a meaningful opportunity, the probationer *should* object to a perceived facial constitutional flaw at the time a probation condition initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction." (*Sheena K*., *supra*, 40 Cal.4th at p. 889, italics added.)  What Charley really is asking us to hold is that objections are excused simply because an issue has been taken up for review by our state's highest court.  We decline to adopt such a rule.  That *would* be a change in the law, and represent a dramatic departure from "[t]raditional waiver and objection principles." (*Welch*, at p. 236.)

## DISPOSITION

The disposition order is modified to strike the language in probation condition number 20 stating "or any material which depicts partial or complete nudity."  In all other respects it is affirmed.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*In re Carlos C.* (A150737)

Trial Court:   Napa County Superior Court

Trial Judge:   Hon. Thomas E. Warriner

Counsel:

Lauren E. Dodge, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, Christina vom Saal, Deputy Attorney General, for Plaintiff and Respondent.